IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| DAEDALUS BLUE, LLC, <br>     Plaintiff, <br><br>     v. <br><br> MICROSTRATEGY INCORPORATED, <br>     Defendant. | ) <br> ) <br> ) <br> )     Civil Action No. 2:20CV551 (RCY) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Motion to Dismiss (ECF No. 19), the Special Master's Report and Recommendation Regarding Claim Construction (ECF No. 78), the Special Master's Report and Recommendation Regarding Defendant's Motion to Dismiss (ECF No. 79), and Defendant's Objection (ECF No. 81). The matters have been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J).

For the reasons stated below, the Court will deny Defendant's Motion to Dismiss (ECF No. 19) without prejudice, adopt the Special Master's Report and Recommendation Regarding Claim Construction (ECF No. 78), adopt the Special Master's Report and Recommendation Regarding Defendant's Motion to Dismiss (ECF No. 79), and overrule Defendant's Objection (ECF No. 81).

**I. Factual Allegations**

The United States Patent and Trade Office ("PTO") issued United States Patent No. 8,341,172 ("the '172 Patent") on December 25, 2012. (Compl. ¶ 11, ECF No. 1.) The PTO issued United States Patent No. 9,032,076 ("the '076 Patent") on May 12, 2015. (*Id.* ¶ 20.) The

inventions were originally developed by the International Business Machines Corporation. (*Id.* ¶ 1.) Daedalus Blue, LCC, ("Plaintiff") is the current owner of the two patents. (*Id.* ¶¶ 12, 21.) The '172 Patent describes "systems and methods that improve the functioning of a computer, including improvements to the way in which information storage and retrieval systems store and access data through improved means of generating aggregate data values from across one of more data sources, and merging aggregate and non-aggregate data values." (*Id.* ¶ 13.) The '076 Patent describes "techniques that improve the methods for restricting and granting user access to resources." (*Id.* ¶ 22.)

MicroStrategy Incorporated ("Defendant") is an analytics software and services company. (*Id.* ¶ 29.) Its core offering is the MicroStrategy Platform. (*Id.*) The MicroStrategy Platform includes the Advanced Reporting Tools, which include tools that aggregate functions to aggregate data values from data sources. (*Id.* ¶¶ 36-38.) The MicroStrategy Platform also includes the MicroStrategy Intelligence Server which provides role-based access control. (*Id.* ¶ 39.) Daedalus alleges that these MicroStrategy products, and others, infringe on the '172 and '076 Patents. (*Id.* ¶¶ 41-68.)

## II. Procedural History

Plaintiff filed a Complaint on November 4, 2020. (ECF No. 1.) On December 30, 2020, Defendant filed a Motion to Dismiss for Failure to State a Claim and a Memorandum in Support. (ECF Nos. 19-20.) On January 25, 2021, Plaintiff filed a Memorandum in Opposition. (ECF No. 33.) Defendant filed its Answer on February 1, 2021. (ECF No. 34.) Defendant filed a Reply on February 8, 2021. (ECF No. 35.)

On May 28, 2021, Defendant and Plaintiff each filed their Claim Construction Briefs. (ECF Nos. 56-57.) On June 11, 2021, each party filed a Reply to the other's Claim Construction

Brief. (ECF Nos. 58-59.) On July 15, 2021, the Court held a Markman Hearing. (ECF Nos. 67, 72.)

The Court held a Status Conference on August 3, 2021, and a subsequent Order directed the parties to provide the names of individuals to be considered for appointment as a special master. (ECF Nos. 73-74.) On August 17, 2021, the parties submitted a Joint Submission for Consideration of a Special Master. (ECF No. 75.) On October 28, 2021, the Court entered an Order appointing Dr. Joshua J. Yi as Special Master. (ECF No. 77.)

Dr. Yi filed a Special Master's Report and Recommendation Regarding Claim Construction ("Claim Construction R&R") and a Special Master's Report and Recommendation Regarding Defendant's Motion to Dismiss ("Motion to Dismiss R&R") on January 21, 2022. (ECF Nos. 78-79.) Defendant filed an Objection on February 4, 2022. (ECF No. 81.) Plaintiff filed a Response on February 18, 2022. (ECF No. 82.) Defendant filed a Reply on February 24, 2022. (ECF No. 83.)

### III. Standard of Review

Pursuant to Federal Rule of Civil Procedure 53(f), the Court reviews all objections to a special master's findings of fact and law *de novo*. Fed. R. Civ. P. 53(f). "In acting on a master's order . . . the Court may adopt or affirm, modify, wholly or partly reverse, or resubmit to the master with instructions." *Id.*

### IV. Report and Recommendation Regarding Claim Construction

Defendant objects to the Special Master's recommendations on the construction of: "aggregate access method" and "runtime component." (Obj. at 2, ECF No. 81.)[1]

The purpose of claim construction is to provide the meaning and scope of the claims at

---

[1] The Court employs the pagination assigned to all documents referenced herein by the CM/ECF docketing system.

3

issue in an infringement action. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). "Claim language generally carries the ordinary meaning of the words in their normal usage in the field of invention." *Invitrogen Corp. v. Biocrest Mfg. L.P.*, 327 F.3d 1364, 1367 (Fed. Cir. 2003). The ordinary meaning rule does not prohibit the use of context from the "field of invention, the prior art, and the understanding of skilled artisans." *Id.* The ordinary and plain meaning "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

District courts first look at the language of the claim to determine whether the disputed term is reasonably clear. *Immunogen, Inc. v. Iancu*, 523 F. Supp. 3d 773, 786 (E.D. Va. 2021) (citing *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1363 (Fed. Cir. 2018)). If the term is not reasonably clear, the court looks to intrinsic evidence and then to extrinsic evidence. *Id.* (citing *HZNP Medicines LLC v. Actavis Labs. UT, Inc.*, 940 F.3d 680 (Fed. Cir. 2019)).

### A. "Aggregate access method"

#### 1. Special Master's Recommendation

The Special Master recommended that the Court construe "aggregate access method" according to its "plain-and-ordinary meaning." (Claim Construction R&R at 16, ECF No. 78.) The Special Master found that the "language of the claim adequately defines the meaning of the term" and found that a construction of "plain-and-ordinary meaning" was not inadequate. (*Id.*) Further, the Special Master determined that Defendant's proposed construction would impermissibly narrow the scope of the claim. (*Id.* at 17.)

### 2. Defendant's Objection

Defendant objects to the Special Master's recommendation that the Court construe "aggregate access method" according to its plain and ordinary meaning. (Obj. at 2.) It requests that the Court: (1) clarify "what it means to be an 'aggregate' access method by explaining that it is a type of access method where an aggregate data value is computed from multiple other values, for example as in calculating a sum, slope, minimum, or maximum value" and (2) explain that the values come "from multiple rows of a query result." (*Id.* at 2-3.) Otherwise, it is not clear what the ordinary and plain meaning is and what meaning of the term the jury would apply. (*Id.* at 3.) Defendant notes that the Special Master used an example in his Claim Construction R&R to explain aggregate and that the patent itself contains examples. (*Id.* at 5-6.) Defendant argues that the Court should include "a type of access method that computes aggregate data value(s) from input data" and include the examples from patent '172 in its claim construction. (*Id*. at 4.) It contends that these examples would aid the jury in understanding the meaning of the term. (*Id.* at 6.)

### 3. Plaintiff's Response

Plaintiff agrees with the Special Master that "aggregate access method" requires no construction. (Resp. at 2, ECF No. 82.) Plaintiff argues that the Special Master's use of examples is irrelevant. (*Id*. at 3.) The first example is actually an example of an "expression," not an example of "aggregate" (*Id.*) The second example was merely the Special Master repeating what was disclosed in the patent itself. (*Id.*) There is no reason to believe that the parties will disagree on whether something is an expression for determining an aggregate value. (*Id.*) In the event that there is a disagreement, the Court can take up the issue of further construction at that time. (*Id.* at 4.) As such, no further construction is necessary.

### 4. The Court's Ruling

The Court agrees with the Special Master that the term "aggregate access method" should be construed according to its plain and ordinary meaning. Claim construction begins with the language of the claims. *Phillips*, 415 F.3d at 1314; *Vitronics Corp. v. Conceptronic Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Claim terms should be read in the context of the specification in which they appear. *Markman*, 52 F.3d at 979.

The Court finds that when read in the context of the claims in which it is used, the plain and ordinary meaning of "aggregate access method" is adequate, and further construction is not necessary. Claim 1 and Claim 7 both explain that "an aggregate access method specifies a set of input data and an expression for determining an aggregate data value from the set of input data." (Compl. Ex. 1, ECF No. 1-2.) The Court agrees with the Special Master that this is "more than sufficient to explain what 'aggregate' means and what differentiates an 'aggregate access method' from other access methods." (R&R Claim Construction at 17.)

The Court finds that including "from multiple rows of a query result," as requested by Defendant, would impermissibly narrow the scope of the claim term. Adding this clause would exclude a disclosed embodiment. The Federal Circuit has explained that terms should not be construed in a manner that excludes embodiments disclosed in the specifications of the patent. *See Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1277 (Fed. Cir. 2008). Figure 2A includes "other data representation" that is not limited to "multiple rows of a query result." (Compl. Ex. 1 at 4.) Including "from multiple rows of a query result" in the claim construction would impermissibly exclude this embodiment.

The Court will overrule Defendant's objection to the claim construction for "aggregate access method" and will adopt the Special Master's recommendation.

### B. "Runtime component"

#### 1. Special Master's Recommendation

The Special Master recommended that the Court construe "runtime component" according to its "plain-and-ordinary meaning." (*Id.* at 25.) The Special Master found that the term was "well-known in the art" and that the plain meaning of the term does not limit it to running at a specific time during program execution. (*Id.* at 23.) The Special Master noted that, under *Thorner*, claims are construed according to their plain and ordinary meaning unless the patentee "acted as his/her own lexicographer or the applicant disclaimed part of the term's scope during prosecution." (*Id.* (citing *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).) Given that Defendant did not allege that either exception applied, the Special Master concluded that the plain and ordinary meaning was the proper construction. (*Id.*)

#### 2. Defendant's Objection

Defendant objects to the Special Master's recommendation that the Court construe "runtime component" according to its plain and ordinary meaning. (Obj. at 6.) Defendant requests that the Court construe "runtime component" as "a software component that executes during a runtime (i.e., program execution) after a user submits a query." (*Id*. at 6-7.) Defendant argues that the Special Master relied on his technical background, which the members of the jury likely will not have. (*Id*. at 7.) Defendant claims that both parties agreed at the Markman hearing that a runtime component executes "after the query is submitted." (*Id*.) Further, Defendant contends that it is not arguing for a departure from the general rule that terms are given their plain and ordinary meaning; instead, it is arguing for the Court to provide the jury with an explanation of the term's plain and ordinary meaning. (ECF No. 83, at 3.)

### 3. Plaintiff's Response

Plaintiff agrees with the Special Master that "runtime component" requires no construction. (Resp. at 4.) Plaintiff contends that "patent claims are to be construed in the light of the knowledge of a person of ordinary skill in the art," so the Special Master's understanding of the phrase should not be discounted. (*Id.* at 5.) Plaintiff argues that Defendant has failed to allege that either of the two exceptions under *Thorner* apply. (*Id.*) Plaintiff contends that Defendant mischaracterized their "agreement" at the Markman hearing, noting that it never agreed that the runtime component only executes after "enter" is pushed, and Plaintiff argues that a temporal limit should not be added to the claim construction. (*Id.* at 6.)

### 4. The Court's Ruling

The Court agrees with the Special Master that the term "runtime component" should be construed according to its plain and ordinary meaning. As previously discussed, claim construction begins with the language of the claims. *Phillips*, 415 F.3d at 1314. "Claims are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *See id.* at 1313.[2]

The term "runtime component" only occurs in Claim 1. The relevant part of Claim 1 states:

> A system for generating aggregate data values from data stored in a data source, comprising . . . a *runtime component* configured to process an abstract query that includes the at least one logical field by (i) retrieving a definition for the aggregate access method, (ii) determining aggregate data values according to definition, (iii) merging the aggregate data values with query results obtained for

---

[2] As discussed by Plaintiff and the Special Master, there are only two exceptions to this rule. These exceptions are: (1) "when a patentee sets out a definition and acts as his own lexicographer" and (2) "when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner*, 669 F.3d at 1365. Given that Defendant has not argued that either applies, the Court will not discuss these exceptions.

logical fields . . . and (iv) returning the results to the requesting entity.

(Compl. Ex. 1 at 25) (emphasis added). "The words used in the claims must be considered in context and are examined through the viewing glass of a person skilled in the art." *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LCC*, 350 F.3d 1327, 1338 (Fed. Cir. 2003).

The parties largely agree on what a person skilled in the art would read the term to mean. Plaintiff contends that the plain and ordinary meaning of "runtime component" is a "software component that can execute whenever the database service is running." (ECF No. 57, at 15.) Defendant originally contended that "runtime component" meant "a software component that executes when a user submits a query." (ECF No. 56, at 13.) In its Objection, the Defendant now describes the term's meaning as "a software component that executes during a runtime (i.e. program execution)." (Obj. at 7.) The Special Master stated that "the term 'runtime component' is well-known in the art [and it] simply means a component (. . . likely software in the context of the '172 Patent) that executes during runtime (i.e., program execution)." (R&R Claim Construction at 23.) The parties and Special Master all agree that a runtime component means "a software component that executes."

The only dispute between the parties is when the execution occurs. Both Plaintiff and the Special Master construe the term without a temporal limitation. (Resp. at 5-6.) The Special Master stated that the ordinary meaning does not "limit the term the term to running at a specific time during program execution." (Claim Construction R&R at 23.) The Special Master pointed to the patent's use of permissive language instead of mandatory language, as it states "when a user submits an abstract query for execution, the runtime component *may* inspect the logic fields . . . ." (*Id.* at 23-24; Compl. Ex. 1 at 20:62-63.) Further, the Special Master noted that adding a temporal limitation would limit the scope of the term to specific embodiments. (Claim

9

Construction R&R at 24.) The Federal Circuit has stated that "it is improper to read limitations from a preferred embodiment described in the specification – even if it is the only embodiment – into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Defendant overstates the "agreement" that the parties reached at the Markman hearing in seeking to incorporate "after a user submits a query" into the construction of the claim. (*See* Obj. at 7.) In quoting the transcript of the Markman hearing, Defendant neglects to include the subsequent discussion of whether the query must be submitted by a user and how that affects the "when" issue. (*See* ECF No. 72, at 74:13-25, 75:1-20.) Plaintiff has clearly agreed that, in the context of a user submitting a query, the runtime would occur at some point after the user submits the query. (*See id.* at 74:1-7.) However, Plaintiff has not agreed that only users can submit queries and has not agreed to a temporal limitation on queries submitted by a non-user requesting entity. (*See id.* at 74:12-25, 75:1-10.)

The Court agrees with the Special Master that the plain and ordinary meaning of runtime component should be used and that the plain and ordinary meaning does not include a temporal limitation. Therefore, the Court will overrule Defendant's objection to the claim construction for "runtime component" and will adopt the Special Master's recommendation.

### V. Report and Recommendation Regarding Defendant's Motion to Dismiss

The Special Master recommended denying Defendant's Motion to Dismiss without prejudice and granting Defendant leave to file a motion for summary judgment after the close of fact discovery. (Mot. Dismiss R&R, ECF No. 79.) Neither party has objected to this recommendation, and the time for making objections has passed. The Court agrees with the

Special Master and the legal contentions made in the Motion to Dismiss R&R. As such, the Court will adopt the recommendation to deny Defendant's Motion to Dismiss without prejudice.

## VI. Conclusion

For the foregoing reasons, the Court will deny Defendant's Motion to Dismiss (ECF No. 19) without prejudice, adopt the Special Master's Report and Recommendation Regarding Claim Construction (ECF No. 78), adopt the Special Master's Report and Recommendation Regarding Defendant's Motion to Dismiss (ECF No. 79), and overrule Defendant's Objection (ECF No. 81).

An appropriate Order shall issue.

/s/ 
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: March 9, 2022