**PUBLIC REDACTED VERSION**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| DAEDALUS BLUE, LLC, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO. 20-cv-00551-RCY-RJK |
| ) | |
| v. ) | |
| ) | |
| MICROSTRATEGY INCORPORATED ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |

**PLAINTIFF DAEDALUS BLUE, LLC'S MEMORANDUM IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY OF SUZANNE STUCKWISCH**

**I.      INTRODUCTION**

Plaintiff Daedalus Blue, LLC ("Daedalus") respectfully moves to strike portions of the rebuttal report of Defendant MicroStrategy Incorporated's ("MicroStrategy") damages expert, Suzanne Stuckwisch, and to preclude her from testifying regarding these opinions at trial.

First, Ms. Stuckwisch bases her affirmative reasonable royalty opinion on a patent sale offer but fails to analyze whether the offer is comparable to the circumstances of the hypothetical negotiation in this case.  Ms. Stuckwisch's opinions should be stricken on this ground alone.  To make matters worse, Ms. Stuckwisch—in violation of the Federal Rules of Civil Procedure— attempted to correct the deficiencies in her report by testifying at her deposition that the offer is comparable with proper adjustments.  But even if the Court were to consider Ms. Stuckwisch's improper testimony, it is not enough because Ms. Stuckwisch makes no such adjustments in her report.

Second, in her reasonable royalty analysis Ms. Stuckwisch fails to apply the *Georgia-Pacific* factors as required by law, instead using a flawed approach that considers how the parties at the hypothetical negotiation—rather than the factfinder—would have weighed the factors. She also applies equal weight to each factor in the analysis, which does not align with the facts showing that some factors are clearly more important than others.

**II.     LEGAL STANDARD**

Trial courts act as gatekeepers to ensure that expert testimony is both relevant and reliable before it may be admitted at trial.  *See Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  To be admissible, an expert's testimony must be based on sufficient facts or data and the product of reliable principles and methods, and the expert must have reliably applied the principles and

methods to the facts of the case. Fed. R. Evid. 702; *see also Sardis v. Overhead Door Corp.*, 10 F.4th 268, 282 (4th Cir. 2021).

### III.  FACTUAL BACKGROUND

MicroStrategy served the Expert Rebuttal Report of Suzanne M. Stuckwisch ("Stuckwisch Rebuttal Report") on July 29, 2022. (Ex. 1 (Stuckwisch Rebuttal Report).)[1] Ms. Stuckwisch uses a "market" approach based on the *Georgia-Pacific* factors to support her opinion regarding the reasonable royalty that would have resulted from the hypothetical negotiations in this case. (*See id.* at ¶¶ 207-275.)

Daedalus acquired the Asserted Patents from ▇ a pioneer in the cloud-computing and business intelligence space, in ▇ for ▇ (*Id.* at ¶ 170.) The purchase is documented in a Patent Assignment Agreement dated ▇. (*Id.* at ¶ 13, 169-180.) In addition to the Patent Assignment Agreement, ▇, MicroStrategy and Daedalus all produced patent-related agreements in this litigation. (*Id.* at ¶ 181-202.) Ms. Stuckwisch considered the agreements produced in this case and concluded that none of them are technically or economically comparable to the circumstances of the hypothetical negotiations here. (*Id.* at ¶ 203.) Accordingly, she does not base her opinion on any of these agreements because of her conclusion about the lack of comparability. (*Id.*)

Although she concludes the Patent Assignment Agreement is not comparable and therefore not relevant to the reasonable royalty analysis, Ms. Stuckwisch curiously uses an initial offer ▇ made that ultimately led to the Patent Assignment Agreement as the "starting point" for her reasonable royalty analysis because, in her opinion, it is "instructive." (*Id.* at ¶¶

---

[1] Lettered Exhibits are attached to the Declaration of Hillary Bunsow in Support of Daedalus' Motion, filed herewith.

164, 177, 203.) In particular, Ms. Stuckwisch relies on ▇ proposed per patent pricing of ▇ for any patent for which ▇ had documented infringement by either ▇ ▇ (the "▇ Per Patent Offer"). (*Id.* at ¶ 158.)

Ms. Stuckwisch uses the ▇ Per Patent Offer as the "starting point" for her *Georgia-Pacific* analysis for both Asserted Patents. (*Id.* at ¶ 262.) She concludes that "nothing in the record suggests that any one factor [in the *Georgia-Pacific* analysis] would be more important than any other," and thus, "▇ and MicroStrategy would agree to apply equal weight to each of the factors and adjust the starting point by the percentage increase or decrease as determined by the net total factors up or down as a percent of the fourteen total *Georgia-Pacific* factors analyzed." (*Id.* at ¶ 273.) Put another way, she concludes none of the fact-intensive *Georgia-Pacific* factors would have any greater or lesser impact in the hypothetical negotiation analysis than any of the other factors.

## IV.   ARGUMENT

### A.   Ms. Stuckwisch's report should be stricken because her report does not analyze comparability of the ▇ Per Patent Offer on which her opinion is based.

Damages experts in patent cases can rely on patent agreements for a reasonably royalty analysis only if the agreements are both technologically and economically comparable. If a damages expert relies on past agreements to determine the reasonable royalty resulting from a hypothetical negotiation but does not "account for differences in the technologies and economic circumstances of the contracting parties," then the expert's opinions are unreliable under *Daubert* and must be excluded. *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 971 (Fed. Cir. 2022) (quoting *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014)); *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) ("[T]here must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical

negotiation at issue in the case."); *Coleman Co. v. Team Worldwide Corp.*, No. 2:20-cv-351, 2022 WL 1912391, at *2 (E.D. Va. Jan. 31, 2022) ("[T]he district court must exercise its gatekeeping function to bar non-comparable licenses when the license does not meet the baseline of comparability test . . . .").

Here, Ms. Stuckwisch relies on the ▇ Per Patent Offer as the basis of her reasonable royalty opinion. However, in her report she does not state that the offer is technologically or economically comparable. Indeed, her report contains no analysis at all regarding the comparability of the offer to the circumstances of the hypothetical negotiation. Tellingly, her report does contain analyses regarding the comparability of other agreements (*see* Ex. 1 (Stuckwisch Rebuttal Report) at ¶¶ 181-203), which shows that Ms. Stuckwisch is aware of the requirement to analyze comparability, and simply chose not to include such analysis regarding the ▇ Per Patent Offer. Instead of analyzing the comparability of the offer, she states that it is "instructive." But "instructive" does not mean "comparable," as confirmed by Ms. Stuckwisch in her deposition:

> Q. What do you mean by the term "instructive"?
> A. That it provides valuable information as it relates to the hypothetical negotiation in terms of what either one or both parties may have considered or been contemplating as a part of the hypothetical negotiation.
> Q. Are you using the term "instructive" differently here than the word "comparable"?
> A. By definition I -- yes, I am.

(Ex. 2 (Stuckwisch Dep. Tr.) at 39:5-14.)[2]

---

[2] Ms. Stuckwisch relies on the ▇ Per Patent Offer, and not the Patent Assignment Agreement that resulted from the offer, as the basis for her reasonable royalty opinion. (*See* Ex. 1 (Stuckwisch Rebuttal Report) at ¶¶ 177, 203-204; Ex. 2 (Stuckwisch Dep. Tr.) at 53:12-56:16 ("I have no intention of telling the jury that [the Patent Assignment Agreement] is comparable …. I'm not saying it's comparable.").)

As Ms. Stuckwisch fails to analyze the comparability of the ▉ Per Patent Offer in her report, her affirmative reasonable royalty opinions should be excluded. *See Apple*, 25 F.4th at 971 (damages testimony should have been excluded by lower court where expert failed to make appropriate adjustments); *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012) (ordering new trial because jury verdict was based on expert opinion that relied on non-comparable licensing programs and survey); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010) (error for district court to base royalty on licenses without any factual findings accounting for technological and economic differences); *DataQuill Ltd. v. High Tech Comput. Corp.*, 887 F. Supp. 2d 999, 1023 (S.D. Cal. 2011) (excluding opinion where expert performed no analysis of economic differences); *Netfuel, Inc. v. Cisco Sys., Inc.*, No. 5:18-cv-02352-EJD, 2020 WL 1274985, at *14-15 (N.D. Cal. Mar. 17, 2020) (excluding opinion where expert noted economic differences but did not factor them into his royalty calculations).

**B.  Ms. Stuckwisch cannot remedy the deficiencies in her report through deposition testimony.**

During the deposition, Ms. Stuckwisch (or perhaps counsel) must have recognized based on Daedalus' questioning that the lack of a comparability analysis was problematic. As a last-ditch attempt to save her expert report from being stricken, she changed her tune to say that the ▉ Per Patent Offer is "economically comparable" to the hypothetical negotiation licenses "with appropriate adjustments." (Ex. 2 (Stuckwisch Dep. Tr.) at 59:12-17; *see also id.* at 59:2-11, 63:14-64:5.) But this cannot save Ms. Stuckwisch's opinion from being stricken.

MicroStrategy was required to disclose its affirmative expert opinions on damages in a written report on or before July 29, 2022, pursuant to the Rule 26 and Rule 16 Scheduling Order in this case. (Dkts. 32-1, 89, 104.) Opinions disclosed for the first time after that date should be excluded. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (expert report must contain "a complete

statement of *all opinions* the witness will express and the basis and reasons for them" (emphasis added)); *In re C.R. Bard, Inc.*, 948 F.Supp.2d 589, 643-44 (S.D.W. Va. 2013) (excluding expert opinion disclosed for first time at deposition); *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) ("Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony."); *see also* Fed. R. Civ. P. 37(c) (party cannot use information it failed to provide under Rule 26(a)).

Although her report does not say this, presumably when Ms. Stuckwisch testified that the ▮ Per Patent Offer could be comparable with "appropriate adjustments" she meant adjustments for factual differences between the ▮ Per Patent Offer and the economic circumstances of the hypothetical negotiations. (*See* Ex. 2 (Stuckwisch Dep. Tr.) at 63:14-64:5 (adjustments must be made to "take into account any differences at the time of the hypothetical negotiation and the starting point"), 64:21-65:9 (listing factual differences as examples of adjustments).) But even if Ms. Stuckwisch's deposition testimony were considered, her expert report remains deficient because she did not make "appropriate adjustments" for any of the factual differences that she noted between the offer and the hypothetical negotiations.

| Factual Differences | Admission That Adjustments Were Not Made |
|---|---|
| The hypothetical negotiations assumed infringement and validity, but the ▮ offer did not. (*See* Ex. 1 (Stuckwisch Rebuttal Report) at ¶ 78; Ex. 2 (Stuckwisch Dep. Tr.) at 60:18-25 (infringement and validity not established at time of ▮ offer).) | No adjustments were made. (*See* Ex. 1 (Stuckwisch Rebuttal Report) at ¶¶ 207-275; Ex. 2 (Stuckwisch Dep. Tr.) at 86:17-89:9.) |
| The ▮ Offer was made to Daedalus, who was not using the Asserted Patents and intended to use them only for licensing, whereas the hypothetical negotiation licenses were granted to MicroStrategy, who was using and benefitting from the patents. (*See* Ex. 1 (Stuckwisch Rebuttal Report) at ¶¶ 169-177, 204, 232.) | No adjustments were made. (*See* Ex. 1 (Stuckwisch Rebuttal Report) at ¶¶ 207-275; Ex. 2 (Stuckwisch Dep. Tr.) at 90:10-91:5.) |

| Factual Differences | Admission That Adjustments Were Not Made |
|---|---|
| ▓▓▓ (See Ex. 1 (Stuckwisch Rebuttal Report) at ¶ 170.) | No adjustments were made. (See Ex. 1 (Stuckwisch Rebuttal Report) at ¶¶ 207-275; Ex. 2 (Stuckwisch Dep. Tr.) at 68:10-77:17.) |
| Evidence indicated that the '172 Patent was particularly valuable to ▓▓ (See Ex. 1 (Stuckwisch Rebuttal Report) at ¶ 174; Ex. 2 (Stuckwisch Dep. Tr.) at 77:18-81:25, 98:15-100:14 ▓▓▓ | No adjustments were made. (See Ex. 1 (Stuckwisch Rebuttal Report) at ¶¶ 207-275; Ex. 2 (Stuckwisch Dep. Tr.) at 77:18-81:25, 98:15-100:14.) |
| At the time of the ▓▓ Offer, some third parties were already licensed to the Asserted Patents. (See Ex. 1 (Stuckwisch Rebuttal Report) at ¶ 171.) | No adjustments were made. (See Ex. 1 (Stuckwisch Rebuttal Report) at ¶¶ 207-275; Ex. 2 (Stuckwisch Dep. Tr.) at 83:13-86:16.) |
| The ▓▓ Offer was not specific to the value of the Asserted Patents but instead based on a per-patent amount for hundreds of patents. The offer did not name the Asserted Patents, so it is unknown whether ▓▓ was including those patents in the ▓▓ offer, or whether ▓▓ would have assigned a higher offer price to the patents. (See Ex. 2 (Stuckwisch Dep. Tr.) at 82:1-8 (unclear which patents were included in the ▓▓ per patent offer price).) | No adjustments were made. (See Ex. 1 (Stuckwisch Rebuttal Report) at ¶¶ 207-275; id. at ¶ 262.) |

Because Ms. Stuckwisch made no adjustments to account for specific factual differences that she noted between the ▓▓ Per Patent Offer and the hypothetical negotiations, her affirmative reasonable royalty opinions should be stricken. *See Apple*, 25 F.4th at 971; *LaserDynamics*, 694 F.3d at 79; *ResQNet.com*, 594 F.3d at 872; *DataQuill*, 887 F. Supp. 2d at 1023; *Netfuel*, 2020 WL 1274985, at *14-15.

### C. Ms. Stuckwisch's reasonable royalty analysis reveals a fundamental misunderstanding of the *Georgia-Pacific* factors and Ms. Stuckwisch misapplies the factors.

Ms. Stuckwisch's report evidences a fundamental lack of understanding of the *Georgia-Pacific* factors and her opinions should be stricken for this reason as well. The *Georgia-Pacific* factors are factors that the Federal Circuit has held to be relevant to a reasonable royalty analysis. *See ResQNet.com*, 594 F.3d at 869. Instead of providing analysis that will help the finder of fact to conclude how the *Georgia-Pacific* factors would have impacted the hypothetical negotiations, Ms. Stuckwisch instead analyzes how the parties to the hypothetical negotiations would apply the *Georgia-Pacific* factors to adjust the starting point for the negotiations. (*See* Ex. 1 (Stuckwisch Rebuttal Report) at ¶ 273; Ex. 2 (Stuckwisch Dep. Tr.) at 146:20-147:11.) But it is the ***fact-finder***—not the ***parties themselves***—who analyzes the factors to determine a reasonable royalty. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970) (*Georgia-Pacific* factors are "[a] comprehensive list of evidentiary facts relevant, in general, to the determination of the amount a reasonable royalty for a patent license"); *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015) (*Georgia-Pacific* analysis "determine[es] the royalty rate that would have emerged from the hypothetical negotiation"); *Kryptek Outdoor Group, LLC v. Salt Armour, Inc.*, No. 1:15-cv-348, 2016 WL 7757267, at *3 (E.D. Tex. Mar. 28, 2016) ("The *Georgia-Pacific* approach asks the fact-finder to determine the royalty upon which the parties would have agreed at a hypothetical negotiation taking place just before infringement began." (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324-25 (Fed. Cir. 2009)).

To illustrate the consequences of Ms. Stuckwisch's mistake, consider *Georgia-Pacific* Factor No. 14, "the opinion testimony of qualified experts." Ms. Stuckwisch opines that the parties at the hypothetical negotiations would have considered her expert opinions offered in

-8-

this litigation (i.e., her report). (*See* Ex. 2 (Stuckwisch Dep. Tr.) at 147:12-25.) But in her report, she does her own *Georgia-Pacific* analysis. (*See id.* at ¶¶ 207-275.) So it's Ms. Stuckwisch's opinion that when doing *Georgia-Pacific* analyses at the hypothetical negotiations, the parties would have considered Ms. Stuckwisch's own *Georgia-Pacific* analysis to inform their own analyses—the result is circular and nonsensical.

Further, Ms. Stuckwisch's equal weighting of the *Georgia-Pacific* factors based on nothing more than her statement that "[n]othing in the record suggests that any one factor would be more important than any other" (*see* Ex. 1 (Stuckwisch Rebuttal Report) at ¶ 273) is not tied to the facts of this case. For example, ▮ and MicroStrategy were competitors at the time of the hypothetical negotiation (*see id.* at ¶¶ 210, 227-230) and thus there is no reasonable debate that Factor No. 5 (commercial relationship between the parties) should provide for a significant adjustment to the starting point. However, per Ms. Stuckwisch's approach, this factor has no greater or lesser impact than any of the other *Georgia-Pacific* factors.

Ms. Stuckwisch's equal weighting is also problematic because by applying the ratio of upward/downward/neutral factors to the starting point, Ms. Stuckwisch is assuming that the value of all fourteen *Georgia-Pacific* factors is equal to the value of the ▮ starting point. To illustrate, if all fourteen factors applied "upward pressure," Ms. Stuckwisch's calculation would result in a maximum 100% premium to the ▮ starting point, or a maximum reasonable royalty of ▮. (*See* Ex. 1 (Stuckwisch Rebuttal Report) at ¶ 273 (methodology involves determining the net total factors up or down, dividing that number by fourteen to derive a percentage, and increasing or reducing the starting point by that percentage).) And conversely, if all fourteen factors applied downward pressure, Ms. Stuckwisch's methodology would result in a $0 reasonable royalty. Both of these results are

nonsensical. Indeed, no court has ever approved of the unusual equal weighting methodology that Ms. Stuckwisch applies in her damages analysis.

An expert report based on such fundamental misunderstandings and misapplications of the *Georgia-Pacific* factors cannot stand; Ms. Stuckwisch's affirmative reasonable royalty opinions should be stricken. *See Virnetx, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1330-34 (Fed. Cir. 2014) (rejecting expert's use of Nash bargaining solution for failure to sufficiently tie the theory to the facts of the case); *El Aguila Food Prods., Inc. v. Gruma Corp.*, 131 Fed.Appx. 450, 453 (5th Cir. 2005) (unpublished) (affirming exclusion of expert testimony where expert made analytical errors).

## V. CONCLUSION

For the foregoing reasons, Daedalus respectfully requests that the Court strike Ms. Stuckwisch's affirmative reasonable royalty opinions from her expert report and preclude MicroStrategy from relying on these opinions at trial.

Dated: October 26, 2022                                   Respectfully Submitted,

By: /s/ *Walter D. Kelley, Jr.*

Walter D. Kelley, Jr. (VSB No. 21622)
**HAUSFELD, LLP**
888 16th Street, N.W. Suite 300
Washington, DC 2006
Tel: (202) 540-7157
Fax: (202) 540-7201
E-mail: wkelley@hausfeld.com

Denise M. De Mory (*Pro Hac Vice*)
Cal. Bar No. 168076
Jennifer L. Gilbert (*Pro Hac Vice*)
Cal. Bar. No. 255820
jgilbert@bdiplaw.com

>
> Robin Curtis (*Pro Hac Vice*)
> Cal. Bar No. 271702
> rcurtis@bdiplaw.com
> Gail Jefferson (*Pro Hac Vice*)
> Cal. Bar No. 325874
> gjefferson@bdiplaw.com
> **BUNSOW DE MORY LLP**
> 701 El Camino Real
> Redwood City, CA 94063
> Telephone: (650) 351-7248
> Facsimile: (415) 426-4744
>
> Attorneys for Plaintiff
> DAEDALUS BLUE, LLC

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) with a copy of this document via the Court's CM/ECF system.

Dated:  October 26, 2022

By:  /s/ *Walter D. Kelley, Jr.*

Walter D. Kelley, Jr. (VSB No. 21622)
**HAUSFELD, LLP**
888 16th Street, N.W. Suite 300
Washington, DC 2006
Tel: (202) 540-7157
Fax: (202) 540-7201
E-mail: wkelley@hausfeld.com

Denise M. De Mory (*Pro Hac Vice*)
Cal. Bar No. 168076
Jennifer L. Gilbert (*Pro Hac Vice*)
Cal. Bar. No. 255820
jgilbert@bdiplaw.com
Robin Curtis (*Pro Hac Vice*)
Cal. Bar No. 271702
rcurtis@bdiplaw.com
Gail Jefferson (*Pro Hac Vice*)
Cal. Bar No. 325874
gjefferson@bdiplaw.com
**BUNSOW DE MORY LLP**
701 El Camino Real
Redwood City, CA 94063
Telephone: (650) 351-7248
Facsimile: (415) 426-4744

Attorneys for Plaintiff
DAEDALUS BLUE, LLC