IN UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| DAEDALUS BLUE, LLC,<br>　　　Plaintiff,<br><br>　　　v.<br><br>MICROSTRATEGY INCORPORATED,<br>　　　Defendant. | )<br>)<br>)　Civil Action No. 2:20CV551 (RCY)<br>)<br>)<br>)<br>)<br>) |

## SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S *DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. MARK JONES

Pursuant to the Order Appointing Special Master (Dkt. No. 250), the undersigned respectfully submits the following Report and Recommendation regarding Plaintiff's *Daubert* Motion to Exclude Expert Testimony of Dr. Mark Jones to United States District Judge Roderick C. Young of the United States District Court for the Eastern District of Virginia.

Plaintiff Daedalus Blue, LLC filed its motion on October 26, 2022. Dkt. No. 194 ("Mot."). Defendant MicroStrategy Incorporated filed its opposition brief on November 9, 2022. Dkt. No. 236 ("Opp."). Plaintiff filed its reply brief on November 21, 2022. Dkt. No. 255 ("Reply").

For the reasons described below, the undersigned recommends that the Court **GRANT-IN-PART** and **DENY-IN-PART** Plaintiff's motion. More specifically, the undersigned recommends **DENYING** Plaintiff's motion for the first two grounds, but recommends **GRANTING** with respect to a specific sentence in Dr. Jones's expert report for the third ground, but otherwise **DENYING** Plaintiff's motion for the third ground.

1

## I. BACKGROUND OF THE MOTION

Plaintiff moves to exclude the testimony Defendant's technical expert, Dr. Mark Jones, on three grounds: (1) Dr. Jones does not meet the minimum level of skill for a person of ordinary skill in the art ("POSITA"), (2) Dr. Jones should not be permitted to testify regarding the technical analysis of source code analysis performed by Defendant's employee Mr. Cezary Raczko, and (3) Dr. Jones's opinions regarding the prosecution of the patents are outside his expertise and irrelevant. Reply at 2–4, 4–6, 6–7.

## II. LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993).

To be considered reliable, an expert opinion "must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999) (citing *Daubert*, 509 U.S. at 592-93). The district court enjoys "broad latitude" in determining the reliability and admissibility of expert testimony, and its determination receives

considerable deference. *Kumho Tire*, 526 U.S. at 142 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997)); *see also Oglesby*, 190 F.3d at 250.

In a patent context, an expert witness must have at least ordinary skill in the art. *Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1377 (Fed. Cir. 2022). "Without that skill, the witness' opinions are neither relevant nor reliable. The opinions would not be based on any specialized knowledge, training, or experience that would be helpful to the factfinder." *Id.*

### III. THE PARTIES' ARGUMENTS AND SPECIAL MASTER'S LEGAL ANALYSIS

Plaintiff argues that some of Dr. Jones's opinions should be excluded based on three different grounds which the undersigned will analyze one at a time below.

**A. Ground 1: Whether Dr. Jones meets the minimum level of skill for a POSITA**

<u>The Parties' Positions:</u>

Plaintiff contends that a POSITA is a person with "a Master of Science degree in Computer Science or Computing Engineering, with at least one or two years of academic or professional engineering in the design of software for managing database systems. Alternatively, a person with a Bachelor of Science degree in Computer Science or Computing Engineering, with three or more years of such experience in the field." Mot. at 2. Defendant's definition for a POSITA is similar, namely, a person with "at least a Bachelor's in Computer Science or Computer Engineering with 3 years of academic or professional engineering experience in the design of software for managing database systems." *Id.* at 2–3.

In its opposition, Defendant contends that Dr. Jones more than meets either party's definitions for a POSITA, and thus is qualified to opine on infringement or validity issues. Opp. at 1–2. More specifically, Defendant contends that Dr. Jones has a B.S. and Ph.D. in Computer

3

Science and 25 years of academic experience as a Professor of Computer Science and Computer Engineering, including research experience related to the design of software for managing database system and teaching of classes related to the same. *Id.* at 3.

Plaintiff contends that Dr. Jones does not have the minimum level of skill for a POSITA because he lacks the requisite "design experience in data management systems that the parties agree is required to be a POSITA with respect to the patents-in-suit." Reply at 1. More specifically, Plaintiff contends that Dr. Jones has "no experience designing commercial database management products," and that Dr. Jones's teaching and research experience is not an adequate substitute for design experience of commercial database management systems. *Id.* at 2–3. For at least those reasons, Plaintiff contends that Dr. Jones should not be allowed to opine on infringement or validity issues, and that the Court should exclude his testimony at trial. *Id.* at 4.

**Special Master's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the undersigned agrees with Defendant that Dr. Jones is a POSITA and thus should be allowed to testify on infringement and validity issues for the reasons that follow. ***First***, Dr. Jones is a POSITA under either parties' definition of a POSITA. More specifically, the parties agree that a POSITA is a person with "at least a Bachelor's in Computer Science or Computer Engineering with 3 years of academic or professional engineering experience in the design of software for managing database systems."[1] Dr. Jones has a Ph.D. in Computer Science, which satisfies the "at least a Bachelor's in Computer Science or Computer Engineering" aspect of the definition. There also does not

---

[1] Dr. Jones is also a POSITA under Plaintiff's primary definition of a POSITA ("a Master of Science degree in Computer Science or Computing Engineering, with at least one or two years of academic or professional engineering in the design of software for managing database systems.").

4

appear to be any dispute that—most, if not all, of—Dr. Jones's 25 years of academic research and teaching has been directed towards design of software for managing database systems, which satisfies the "with 3 years of academic or professional engineering experience in the design of software for managing database systems" aspect of the definition.

*Second*, Plaintiff's arguments are based on a narrowed version of its own definition for a POSITA; namely, Plaintiff argues that Dr. Jones lacks experience designing "commercial database management products." But neither party's definition for a POSITA's skill level limits the experience to "commercial" products. Rather, both parties' definitions do not require experience in a particular type of product, but rather only recite that the experience be directed towards the "design of software for managing database systems," which is broader <u>commercial</u> database management products."

*Third*, with respect to Plaintiff's argument that research experience on database management systems is not a substitute for design experience because "'design' means practical experience actually making systems, not merely studying about them," based on the undersigned's approximately 15 years of both academic and industrial research and design experience, the undersigned disagrees. In the undersigned's opinion, Plaintiff's argument is premised on a narrow definition of "design" that excludes studying current systems to understand their shortcomings in order to propose, implement, and test the performance of an improvement to those systems. But, perhaps in contrast to scientific disciplines such as biology or physics where researchers may not undertake design work, engineering "research" is often simply a form of advanced design and is not necessarily mutually exclusive with "design."

Therefore, for at least the above reasons, the undersigned recommends that the Court find that Dr. Jones is a POSITA and thus should be allowed to testify on infringement and validity issues.

### B. Ground 2: Whether Dr. Jones should be permitted to testify regarding source code analysis allegedly performed by Mr. Raczko

**The Parties' Positions:**

Plaintiff next contends Dr. Jones's opinions are also improper because "they include analysis prepared not by himself," but rather by Mr. Raczko. Mot. at 6. In particular, Plaintiff contends that Exhibits 8 and 10 in Dr. Jones's opening report on invalidity were the result of Mr. Raczko's source code analysis and not Dr. Jones's. *Id.*; *see also id.* at 3–4. Plaintiff contends that Mr. Raczko assisted Dr. Jones in creating "large portions of Exhibits 8 and 10" by identifying the source code that should go into the charts. *Id.* at 4 (citing Mot., Ex. B (Jones Deposition) at 22:4–11, 23:25–24:11, 27:3:3–30:5, 126:11–25). Plaintiff also contends that Dr. Jones "did not draft any of the footnotes in Exhibits 8 or 10 that identify specific lines of source code in version 11.3 of the Microstrategy software; instead, he requested that someone else insert that information into the charts for him." *Id.* (citing Mot., Ex. B at 28:5–7).

Plaintiff contends that Dr. Jones acts as Mr. Raczko's mouthpiece by presenting Mr. Raczko's opinions as his own, which is improper under Federal Rule of Evidence 703. *Id.* (citing cases). Plaintiff contends that Defendant cannot admit Dr. Jones's opinions under Rule 703 because Mr. Raczko conducted his source code analysis specifically for this case, which the Fourth Circuit has held to be improper. *Id.* at 7 (citing *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1143 (4th Cir. 1994)). Plaintiff further contends that it would also be unfairly prejudicial to permit Dr. Jones to testify about Mr. Raczko's source code analysis. *Id.* at 8–9.

6

In its opposition, Defendant contends that Dr. Jones did not rely on Mr. Raczko's "technical analysis," but rather that Dr. Jones "rel[ied] on [Mr. Raczko] for certain facts, but not the analysis." Opp. at 5.

With respect to the passages from Dr Jones's deposition that Plaintiff cites to in support of its contention that Mr. Raczko prepared large portions of Dr. Jones's charts, Defendant contends that the citations do not support Plaintiff's contention. *Id.* at 5–6. With respect to the first two citations (22:4–11 and 23:25–24:11), Defendant contends that neither has to do with the invalidity charts, but rather that he had discussions with Mr. Raczko and that he asked Mr. Raczko where things were located within the source code, respectively. *Id.* at 6. With respect to the third and fourth citations (27:3–30:5 and 126:11–25), Defendant contends that they describe how Dr. Jones asked Mr. Raczko "questions to find certain portions of code as a 'starting place,' but then 'verified' all lines of code by going to examine the code and compare it to code in the other version." *Id.* Defendant contends that it was "reasonable" for Dr. Jones to ask Mr. Raczko to provide a starting point in the code given that there was over 500,000 files in the source code. *Id.* Defendant contends that Dr. Jones "explained his comparison charts in detail and answered pages of questions about them [at his deposition], including questions about how he organized them and the reasons he references certain functionality as equivalent[,]" which "demonstrate[s] his intimate knowledge of the material, and remove[s] any doubt these are his charts and his opinions." *Id.*

Defendant contends that the Federal Rules of Evidence allows an expert to rely on facts from party witnesses. *Id.* (quoting Fed. R. Evid. 703 ("An expert may base an opinion on facts of data in the case that the expert has been made aware of or personally observed.")). Defendant also contends that Plaintiff's expert similarly relied on another person to identify relevant source code, and who provided "considerably more assistance" than Dr. Jones received. *Id.* at 7 n.2.

7

Defendant contends that the cases cited by Plaintiff are inapposite because the expert in those cases either was the mouthpiece of another expert or attempted to "back-door" in an otherwise inadmissible report. *Id.* at 7–8. Defendant contends that, in contrast to those cases, Dr. Jones "specializes in this field, conducted his own analysis, formed his own opinions, and presented them in his report" and the "comparison of the source code, including the charts, is [his] own analysis." *Id.* at 8.

In its reply, Plaintiff contends that Dr. Jones's testimony "establishes that he did not perform the analysis of the source in Exhibits 8 and 10 of his invalidity report, and that Mr. Raczko compiled this information for him." Reply at 4 (quoting Mot., Ex. B (Jones Deposition) at 29:24–30:4, 28:5–7).

With respect to Defendant's argument that Mr. Raczko only provided a "starting place" in the code for Dr. Jones to being with, Plaintiff contends that Dr. Jones "admitted" that "they found the lines of code" and that he "simply typed those results into Exhibits 8 and 10." *Id.* at 5. With respect to Defendant's argument that because Dr. Jones was able to answer questions about Exhibits 8 and 10 during his deposition, that is evidence that the analyses in those exhibits were Dr. Jones's own analysis, Plaintiff contends that "misses the mark" as Dr. Jones had more than two months to study the material prior to his deposition. *Id.* Plaintiff contends that studying the material does not make it Dr. Jones's own analyses. *Id.*

With respect the Defendant's argument that Plaintiff's expert also relied on another person, Plaintiff contends that that comparison is a "false equivalency" for two reasons. First, Plaintiff contends that because Defendant has not raised a *Daubert* challenge to Plaintiff's expert, Defendant's complaints about Plaintiff's expert are "irrelevant." *Id.* at 5–6. Second, Plaintiff contends that the difference between its expert's reliance and Dr. Jones's reliance is that Dr.

8

Jones's reliance on Mr. Raczko was "wholesale." *Id.* at 6. Based on that, Plaintiff contends that Dr. Jones's opinions are actually Mr. Raczko's, and thus should be excluded.

**Special Master's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the undersigned recommends denying Plaintiff's motion for the reasons that follow. ***First***, the undersigned has reviewed the portions of Dr. Jones's deposition transcripts cited by the parties (22:4–11, 23:25–24:11, 27:3:3–30:5, 126:11–25; 127:1–142:23) and concludes that the Dr. Jones—and not Mr. Raczko—performed the analysis of the source code in Exhibits 8 and 10. In the first citation (22:4–11), Dr. Jones describes that he had conversations with Mr. Raczko and other employees of Defendants. As such, that does not support Plaintiff's contention that Mr. Raczko performed the analysis presented in Dr. Jones's opening report.

In the second citation (23:25–24:11), Dr. Jones describes that he asked Mr. Raczko where "things were located ... within the source code." On its face, rather than meaning that Mr. Raczko performed the source code analysis, Dr. Jones's response appears to describe that Mr. Raczko provided a "starting point" for his analysis—potentially in response to Dr. Jones's describing what kind of software functionality he was looking for—by showing Dr. Jones where specific functionality was in the source code. Mot., Ex. B (Jones Deposition) at 29:6–10 (Q. "And is that true for all of the lines of code in the right-hand column of Exhibit 8? [Dr. Jones] "I don't know that it's true for all of them, but certainly I would say most I asked for a starting place, yes.").

In the third and fourth citations (27:3–30:5 and 126:11–25), Dr. Jones described that he "verified" the code that Mr. Raczko "identified" by "examining" it. *Id.* at 28:17–25 (Q. "Did you find those lines of code?" [Dr. Jones] "I verified them. But at least for some of these, I was –

9

either conversations with [Mr. Raczko], but he certainly knew of them and pointed me in the right direction." Q. "When you say you 'verified them,' what do you mean?" [Dr. Jones] "I went to examine the code in – examine the source code."), 126:20–25 (Q. "And this – this is the chart that Cezary Raczko identified the majority of the code in the right-hand column and you verified the code. You had an opportunity to verify it, correct?" [Dr. Jones] "The majority of it I believe that he had first identified it, that's correct.").

Therefore, none of the deposition citations definitively support Plaintiff's contention that Mr. Raczko performed the source code analysis. Rather, the deposition transcripts indicate that Mr. Raczko, at most, found source code that might be useful for Dr. Jones's report,[2] but Dr. Jones reviewed the proffered source code to determine whether it was what he was looking for.

***Second***, with respect to Plaintiff's contention that Dr. Jones "did not draft any of the footnotes in Exhibits 8 or 10 that identify specific lines of source code in version 11.3 of the Microstrategy software," the undersigned does not conclude that this fact necessarily indicates that Dr. Jones's report contains analyses from Mr. Raczko. The undersigned has reviewed the footnotes and conclude that they do not appear to contain "analysis;" rather, they simply appear to provide line numbers to specific source code files in the version 11.3 release indicating where each source code sequence is listed. As such, rather than containing analysis, adding source code line numbers to the footnotes in Exhibits 8 and 10 appears to be an ministerial task, the source code equivalent of adding Bates numbers to an expert report. For at least this reason, the deposition passage (28:5–7) that Plaintiff cites with respect to the footnotes does not support Plaintiff's contention.

---

[2] Given there were over 500,000 files of source code, the undersigned believes that it was reasonable for Dr. Jones to ask Mr. Raczko to jump-start his review of the source code by providing him with a "starting point."

Furthermore, the line numbers in the footnotes appear to correspond to specific functions that Plaintiff identified in the accused software. By contrast, Dr. Jones's invalidity report appears to find the corresponding source code an in earlier version of the source code (version 7.5.0, which Defendant contends is prior art (*i.e.*, is not the accused software). Therefore, finding and adding source code line numbers for the accused software in the footnotes of Exhibits 8 and 10 is not part of Dr. Jones's invalidity analysis, which is based on prior version of the source code, but rather appears to add line numbers to the functions Plaintiff identified.

With respect to the line numbers not in the footnotes, but in the right-hand column of the tables in Exhibits 8 and 10, the undersigned similarly concludes that someone else, *e.g.*, Mr. Raczko, performed the ministerial task of providing the corresponding line numbers for snippets of source code in the prior version that Dr. Jones identified as anticipating each limitation. But as stated above Dr. Jones only used this source code as a "starting point" and that he "verified" that the source code that was put in front him contained the software he was looking for. The deposition passage that Plaintiff cites (29:24–30:4) supports this understanding. More specifically, this passage recites:

> Q. Okay. So they found the lines of code but you put them into the column; is that correct?
> [Dr. Jones]. That's correct.
> Q. Okay. And who is the other person who did this locating of the lines of code in the right-hand columns of Exhibit 8 and Exhibit 10?
> [Dr. Jones]. The starting point was from [Mr. Raczko].

Mot. Ex. B (Jones Deposition) at 29:24–30:4. In the second answer in this passage, Dr. Jones describes that Mr. Raczko provided source code as a starting point for Dr. Jones. Although it is not entirely clear, this first answer in this passage may also describe that the other people may have also provided the line numbers.

***Third***, the undersigned disagrees with Plaintiff that "Defendant cannot admit Dr. Jones's opinions under Rule 703 because Mr. Raczko conducted his source code analysis specifically for this case, which the Fourth Circuit has held to be improper." *Id.* at 7.  But the case Plaintiff cites does not support their contention.  In *United States v. Tran Trong Cuong*, the Fourth Circuit held that it was improper for one expert to "bolster his opinion evidence by testifying that his conclusions as to Tran's actions were 'essentially the same'" of another expert first because it was improper for one expert to "vouch" for another without allowing the first expert to be cross-examined.  18 F.3d at 1143.  The Fourth Circuit also found that "there is no indication that the medical report of [the second expert] was 'of a type reasonably relied upon by experts in a particular field in forming opinions or inferences upon the subject.'"  *Id*.  Finally, the Fourth Circuit questioned whether an expert "usually relies upon forensic medical opinions or reports in forming his opinions in his field of expertise-family medicine."  *Id.*

By contrast, Federal Rule of Evidence 703 expressly permits experts to "base an opinion on facts or data in the case that the expert has been made aware of or personally observed."  Here, the evidence, as described above, shows that Mr. Raczko made Dr. Jones aware of certain passages of source code, as a "starting point," and then Dr. Jones was free to either base his opinion on that source code, or reject it.

Therefore, for at least the above reasons, the undersigned recommends that the Court allow Dr. Jones to testify about his source code opinions as described in his expert report and in Exhibits 8 and 10 attached thereto.

### C. Ground 3: Whether Dr. Jones's opinions regarding the prosecution of the patents are outside his expertise and irrelevant.

**The Parties' Positions:**

Plaintiff finally contends that, rather than limiting his expert report to a discussion of the facts related to the prosecution history of the asserted patents, Dr. Jones provides opinions on "what the patent examiner could have done to reject the patent claims during prosecution." Mot. at 4. Plaintiff specifically identifies that Dr. Jones opines "[t]he allowed claims are not materially different from the claims rejected by the PTAB, and so it appears the Examiner, rather than allowing the claims 14-20, could have instead rejected them based on the same art that was used against the similar claims 1-13." *Id.* (quoting Mot., Ex. A at 14).

Plaintiff contends that Dr. Jones is not an expert in the practices and procedures of the United States Patent and Trademark Office ("PTO") nor an attorney. *Id.* Plaintiff further contends that Dr. Jones is not registered to practice before the PTO and has never worked at the PTO. *Id.* Based on that lack of expertise, Plaintiff moves that "Dr. Jones should not be allowed to offer any opinions regarding the prosecution of the '172 and '076 patents and what the patent examiner could or could not have done to reject the asserted claims during prosecution." *Id*. at 8.

In its opposition, Defendant contends that Dr. Jones is "not offering any opinion on Patent Office practices or procedures[,]" but that he "merely describes the factual history of the patent's prosecution at the Patent Office that further supports his opinions and rebuts those of Dr. Malek[.]" Opp. at 9. More specifically, Defendant contends that Dr. Jones "merely observ[ed] that the Board found these features in the prior art, and therefore these features in the patent claims are in the same prior art" and that "[t]his observation does not require the offering of any opinion on Patent Office practice or procedure . . . and is an observation that is well within his role as providing expert testimony on invalidity of these claims." *Id.*

13

Defendant contends that Plaintiff has not "identified an Patent Office practice or procedure that Dr. Jones opines on, nor any speculation offered by him as to the intent or mindset of anyone at the Patent Office based on any Patent Office practice or procedures." *Id.* at 10.

In its reply, Plaintiff contends that Dr. Jones's opinions regarding the prosecution history of the asserted patents should be excluded because "they are both beyond his expertise as well as irrelevant." Reply at 6. Plaintiff disagrees with Defendant that Dr. Jones did not express any opinions regarding the PTO proceedings, but contends that Dr. Jones provided opinions "regarding what alternative actions the examiners could have taken with respect to the claims under the procedures of the PTO, even though the examiner ultimately allowed the claims to issue." *Id.*

Plaintiff further contends that Dr. Jones's opinions are irrelevant because he is not relying on the prior art references for his anticipation (§ 102) or obviousness (§ 103) opinions, nor does he opine that the patents are invalid due to lack of written description or enablement (§ 112, ¶ 1). *Id.* at 7. Plaintiff contends that of the remaining indefiniteness issues, subject-matter eligibility (§ 101) is a legal issue for the Court to decide and prosecution history is irrelevant to Dr. Jones's indefiniteness (§ 112, ¶ 2) arguments. *Id.*

**Special Master's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the undersigned, who is a registered patent attorney, agrees-in-part with Plaintiff that some of the opinions in Dr. Jones's Opening Expert Report on Invalidity are outside his expertise. In particular, the undersigned concludes that "and so it appears the Examiner, rather than allowing the claims 14-20, could have instead rejected them based on the same art that was used against the similar claims 1-13" on page 14 of Dr. Jones's Opening Expert Report should be excluded.

Although Plaintiff generally argues that Dr. Jones's entire discussion regarding the prosecution history of the asserted patents should be excluded, Plaintiff only highlights a single paragraph from page 14 of Dr. Jones's report. The first half of that paragraph ("[t]he allowed claims are not materially different from the claims rejected by the PTAB") appears to be a run-of-the-mill expert opinion regarding the scope of one set of claims (the allowed claims) as compared to the scope of another set of claims (the claims rejected by the PTAB). The second half of that paragraph ("and so it appears the Examiner, rather than allowing the claims 14-20, could have instead rejected them based on the same art that was used against the similar claims 1-13"), however, involves speculation as to what the Examiner could have done. This speculation appears to necessarily require at least some legal expertise and/or expertise in the practices and procedures of the PTO in order to provide a reliable opinion as to what the Examiner could have done and why the Examiner could have made an alternative decision. But Dr. Jones does not have that expertise, and thus the undersigned recommends excluding this portion of his report. *J&M Indus., Inc. v. Raven Indus., Inc.*, 457 F. Supp. 3d 1022, 1047 (D. Kan. 2020) (holding that defendant's expert "may not speculate as to what the Patent Office Examiner would have concluded.") (internal quotation marks omitted).

The undersigned does not recommend striking any other passages from the sections of Dr. Jones's opening report where he describes the prosecution history of the asserted patents (*i.e.*, Sections 4.1.1 and 4.1.2) for at least two reasons. **First**, Plaintiff has not specifically explained what else is impermissible with the remainder of these sections. **Second**, the undersigned has reviewed these sections and did not find anything that in those sections that necessarily required Dr. Jones to have at least some legal expertise and/or expertise in the practices and procedures of the PTO. Rather, the remainder of these sections either appears to be a factual description of what

occurred during prosecution or Dr. Jones's opinions regarding the scope of a pending or issued claims as compared to the scope of prior art, both of which are permissible and common-place for experts to opine on.

Therefore, for at least the above reasons, the undersigned recommends that the Court exclude "and so it appears the Examiner, rather than allowing the claims 14-20, could have instead rejected them based on the same art that was used against the similar claims 1-13" on page 14 of Dr. Jones's opening report on the invalidity of the patents, but deny Plaintiff's motion with respect to the remainder of Dr. Jones's opinions on the prosecution histories of the asserted patents found in Sections 4.1.1 and 4.1.2).

## IV.   CONCLUSION

For the reasons described herein, the undersigned recommends that the Court deny-in-part and grant-in-part Plaintiff's motion to exclude.

**SIGNED** on the 9th day of April, 2023.

_____
Joshua J. Yi, Ph.D.