IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| DAEDALUS BLUE, LLC,<br>     Plaintiff, | )<br>)<br>) |
| v. | )   Civil Action No. 2:20CV551 (RCY)<br>) |
| MICROSTRATEGY INCORPORATED,<br>     Defendant. | )<br>)<br>)<br>) |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's *Daubert* Motion to Exclude the Testimony of Jim Bergman ("Motion to Exclude," ECF No. 189), the Special Master's Report and Recommendation ("R&R") regarding the same (ECF No. 289), and Defendant's Objection to the R&R (ECF No. 296). The matters have been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will overrule Defendant's Objection, adopt the Special Master's R&R, and deny Defendant's Motion to Exclude.

**I. BACKGROUND**

The United States Patent and Trade Office ("PTO") issued United States Patent No. 8,341,172 ("the '172 Patent") on December 25, 2012. (Compl. ¶ 11, ECF No. 1.) The PTO issued United States Patent No. 9,032,076 ("the '076 Patent") on May 12, 2015. (*Id.* ¶ 20.) The '172 Patent and the '076 Patent were originally developed by the International Business Machines Corporation ("IBM"). (*Id.* ¶ 1.) Daedalus Blue, LCC ("Plaintiff" or "Daedalus") is the current owner of the two patents. (*Id.* ¶¶ 12, 21.) The '172 Patent describes "systems and methods that improve the functioning of a computer, including improvements to the way in which information

storage and retrieval systems store and access data through improved means of generating aggregate data values from across one of more data sources, and merging aggregate and non-aggregate data values." (*Id.* ¶ 13.) The '076 Patent describes "techniques that improve the methods for restricting and granting user access to resources." (*Id.* ¶ 22.)

MicroStrategy Incorporated ("Defendant" or "MicroStrategy") is an analytics software and services company. (*Id.* ¶ 29.) Its core offering is the MicroStrategy Platform. (*Id.*) The MicroStrategy Platform utilizes the Advanced Reporting Tools, which include tools that aggregate functions to aggregate data values from data sources. (*Id.* ¶¶ 36–38.) The MicroStrategy Platform also includes the MicroStrategy Intelligence Server, which provides role-based access control. (*Id.* ¶ 39.) In its Complaint filed on November 4, 2020, Daedalus alleges that these MicroStrategy products, and others, infringe on the '172 and '076 Patents. (*Id.* ¶¶ 41–68.)

## II. PROCEDURAL HISTORY

On July 1, 2022, Plaintiff served Defendant with an expert report authored by Mr. Jim Bergman, Plaintiff's damages expert. (*See* Pl. Opp. Mot. Exclude 5,[1] ECF Nos. 242, 244;[2] Expert Report of J. Bergman, ECF No. 242-1.) Defendant filed its Motion to Exclude on October 26, 2022. (ECF No. 189.) Plaintiff filed its Opposition to Defendant's Motion (ECF Nos. 242, 244) on November 9, 2022, and Defendant filed its Reply (ECF No. 259) on November 21, 2022.

On November 15, 2022, the Court re-appointed Joshua J. Yi, PhD, as Special Master to assist the Court in deciding several pending motions from the parties, including Defendant's Motion to Exclude. (ECF No. 250.) The Special Master issued his R&R regarding Defendant's

---

[1] For this and all other filings, the Court utilizes the pagination assigned by the CM/ECF system and not the pagination appearing on the original document.

[2] The Court provides the ECF numbers of both the sealed, unredacted versions of documents in the record and the public versions, where such dual filings exist.

Motion to Exclude on May 10, 2023. (ECF No. 289.) In that R&R, the Special Master recommended the Court deny the Motion. (R&R 1.) Defendant timely filed its Objection to the Special Master's Report on May 24, 2023. (ECF Nos. 296, 298.) Plaintiff filed its Response to Defendant's Objection on June 7, 2023. (ECF No. 303.) Defendant filed its Reply in support of its Objection on June 13, 2023. (ECF No. 304.)

### III. STANDARD OF REVIEW

When reviewing a party's timely objection to a special master's report and recommendation, the Court must decide *de novo* any objections to the Special Master's factual findings.[3] Fed. R. Civ. P. 53(f). Similarly, the Court must decide *de novo* any objections to conclusions of law recommended by the Special Master. *Id*. "In acting on a master's order . . . the Court may adopt or affirm, modify, wholly or partly reverse, or resubmit to the master with instructions." *Id.*

### IV. DISCUSSION

Title 35 U.S.C. § 284 outlines the requirements for a damages award when calculating damages arising from patent infringement. The statute mandates that damages must be "adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and cost as fixed by the court." 35 U.S.C. § 284. Courts determining the royalty base often utilize a framework established in the case of *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, wherein a hypothetical negotiation is used to simulate "where a willing licensor and a willing licensee are negotiating for a royalty." 318 F.

---

[3] In both Defendant's Objection, Plaintiff's Response, and Defendant's Reply, both parties referenced the standard of review as *clearly erroneous and contrary to law*, per Federal Rule of Civil Procedure 72. However, Rule 72 references the standard of review for a pretrial order and whether it is on a non-dispositive or dispositive issue. While correct that this would be a non-dispositive issue if an order, the standard of review for a Special Master's report and recommendation is *de novo* based on Federal Rule of Civil Procedure 53(f).

Supp. 1116, 1121 (S.D.N.Y. 1970). *Georgia-Pacific* includes a total of fifteen factors to consider when calculating royalties for damages in patent infringement cases. *Id*. Additionally, 35 U.S.C. § 284 states that "[t]he court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances."

Federal Rule of Evidence 702 outlines the standard for admissible expert witness testimony: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case. The Fourth Circuit has articulated the "gatekeeping requirement" of trial judges to ensure expert witnesses are adhering to these principles and those of *Daubert*, specifically with respect to: (1) whether the scientific evidence proffered is reliable and valid; and (2) whether the testimony would aid the trier of fact in deciding the issues in the case. *United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)). The Fourth Circuit has also, however, noted the considerable deference given to trial judges' decisions regarding expert testimony under *Daubert*. *Id*. at 816. A determination that expert testimony is admissible "does not mean that it is not subject to contradiction," but the contradiction(s) should be resolved through contrary experts and cross-examination, through which the factfinder can decide how much weight to give the testimony, and not through exclusion. *Id*. The burden of establishing admissibility of expert testimony is on the party seeking admission of the expert testimony. *Fireman's Fund Ins. Co. v. Tecumseh Prod. Co.*, 767 F. Supp. 2d 549, 553 (D. Md. 2011) (citing *Daubert*, 509 U.S. at 592).

In the present case, Defendant's Motion to Exclude rests on the position that Plaintiff's damages expert, Jim Bergman, improperly considered value-factors beyond those directly associated with the allegedly infringing software functionality, "resulting in an inflated value of the claimed inventions." (Mem. Supp. Mot. Exclude 5, ECF No. 192.) Defendant asserts that Federal Circuit caselaw is clear as to what should and should not be considered, and "Bergman's theory represents the type of financial 'overreach' that the Federal Circuit cases caution against." (*Id*. at 6.) The Special Master, however, concluded that Bergman reliably and validly calculated a royalty base, apportioned that base, and extrapolated a hypothetical profit-split, and thus he recommended that the Motion be denied, with cross-examination available to the Defendant at trial to address any perceived methodological issues. (R&R 22, 30, 35.) In its Objection to the R&R, Defendant challenges the Special Master's findings and recommendations with respect to calculating the royalty base, the apportionment analysis for the '076 Patent, and Mr. Bergman's failure to apportion-out the value of preexisting features of Defendant's MicroStrategy 7i products, which predate the Patents at issue here. (Obj. 1, ECF 296.) Defendant does not object to the Special Master's recommendations with respect to the apportionment analysis for the '172 Patent or the extrapolated profit-split. After conducting its *de novo* review of the R&R and Defendant's Objection, the Court agrees with the Special Master's conclusions and will therefore overrule Defendant's Objection. The Court further finds no clear error in the unobjected-to portions of the R&R and therefore will adopt the R&R and deny the Motion to Exclude.

**A. Calculation of the Royalty Base**

   *1. Special Master's Recommendation*

   The Special Master concluded that "Mr. Bergman properly included non-accused support and maintenance revenue as convoyed or bundled sales in his royalty base." (R&R 22.) In

reaching this conclusion, the Special Master agreed with Bergman's determination that there was a functional relationship between the accused products and the support and maintenance packages. (*Id.*; see also *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995) (stating that damages can be found where unpatented components "function together with the patented component in some manner as to produce a desired end product or result.")).

*2. Defendant's Objections*

Defendant argues that the Special Master's conclusion contains legal errors that are contrary to the Federal Circuit Court's rule requiring that damages opinions "separate the value of the allegedly infringing features from the value of all other features." (Def.'s Obj. 6 (citing *Commonwealth Sci. & Indus. Rsch Org. (CSIRO) v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015)).) Defendant challenges the acceptance of Mr. Bergman's conclusion that the support and maintenance packages have a functional relationship with the software involved and contends that doing so goes against the Federal Circuit's rule in the case of *LaserDynamics, Inc. v. Quanta Computer, Inc.* (Def.'s Obj. 7.) Additionally, Defendant asserts that the Special Master was "led astray" by a 2021 district court case from this district, and that the case in question is very distinct from the present case. (*Id.* 8 (citing *Biedermann Techn. GmbH & Co. KG v. K2M, Inc.*, No. 2:18cv585, 2012 WL 6034269, at *19–20 (E.D. Va. Dec. 10, 2021)).)

Defendant further asserts that Mr. Bergman's application of the income approach methodology and rejection of the entire market value approach was incorrect because "[t]he Federal Circuit has never applied the convoyed sale extension of the entire market value rule . . . as the Special Master recommends." (Def.'s Obj. 8–9 (citing *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995)).) Lastly, Defendant argues the Special Master's conclusion was faulty to the extent it was premised on a "clearly erroneous finding[] that 'Defendant requires its

customers to purchase both the Accused Products and the support and maintenance packages' and that their 'software offering is incomplete without technical support,'" (*id*. at 10 (quoting R&R 22–23)), because MicroStrategy allows customers holding certain licenses to opt-out of purchasing support and maintenance packages after their first year. (*Id*.)[4]

### 3. Plaintiff's Response

Plaintiff supports the Special Master's conclusion that "Mr. Bergman properly included support and revenue in the royalty base." (Pl.'s Resp. 2.) Plaintiff agrees with the Special Master's reliance on the Eastern District of Virginia case, *Biedermann*, to support the idea that a party may recover damages when "unpatented components are sold with patented ones" and function together. (*Id*. (quoting *Biedermann*, 2021 WL 6034269 at *20).) Plaintiff argues that the Special Master correctly applied the standards from *Biedermann* when he concluded that Mr. Bergman correctly determined that there was a functional relationship between the patented products involved in this suit and the support packages sold by MicroStrategy. (*Id*. 3.) Additionally, Plaintiff argues that Defendant is incorrect in its assertion that the "entire market value rule" should be applied to calculate damages in this case. (*Id*.)

Plaintiff goes on to note how each of the cases Defendant relies upon in its Objection are inapposite because they involve non-convoyed sales—in other words, application of the entire market value rule. (*Id*. 4 (citing *Commonwealth Scientific*, 809 F.3d at 1295; *LaserDynamics*, 694 F.3d at 51; *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332 (Fed. Cir. 2018); *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361 (Fed. Cir. 2021).) Lastly,

---

[4] Defendant also challenges Mr. Bergman's testimony to the extent he does not assign a separate apportionment value to the convoyed sales "based on their connection to the patented features of the accused products," i.e., the extent to which the support package services were used specifically in connection with the accused functionalities. (Def.'s Obj. 9–10.) The Court will address this challenge in its apportionment objection analysis, however, as that is where it is more germane.

Plaintiff argues that the Special Master was correct in affirming Bergman's inclusion of "renewal support revenue," i.e., revenue from purchases of support and maintenance packages after the first (required) year, and that Defendant did not provide any evidence to demonstrate that "renewal support has a function without the software" such that it should not be considered in a convoyed sales analysis. (*Id.* 4–5.)

    *4. The Court's Analysis*

The Court agrees with the Special Master's analysis and with the ultimate conclusion that Mr. Bergman properly included non-infringing support and maintenance revenue in his royalty base. The crux of the parties' dispute regarding Bergman's testimony lies in competing positions as to the appropriate metric for calculating the royalty base. Defendant attempts to frame Bergman's analysis as a deficient "entire market value" analysis, repeatedly citing analytical standards drawn from entire market value-based cases, when Bergman in fact conducted an equally valid but distinct "convoyed sales" analysis. Moreover, for the reasons set forth below, the Court finds that Bergman's convoyed sales analysis appears reliable and valid and the product of reliable principles and methods, such that it satisfies the requirements of Federal Rule of Evidence 702.

Because there is a risk of improper compensation when infringing and non-infringing components are included in royalty calculations, the Federal Circuit generally requires "that royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing unit.'" *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (citing *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279 (N.D.N.Y. 2009)). The Federal Circuit stated in *LaserDynamics* that "a narrow exception to this general rule" can be found in the so-called "entire market value rule," being the rule that a party may collect revenue from both unpatented and patented components when they "together constitute[] a functional unit" and the

patented feature drives demand for the product. *Id*. (citing *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995)). When determining if the patented product drives demand for the entire unit, "it is not enough to merely show" that the patented product "is viewed as valuable, important, or even essential." *LaserDynamics*, 694 F.3d at 68. Instead, the party seeking damages must prove that the patented product specifically drove consumers to buy the entire unit. *Id*. Defendant posits that this standard—and the cases applying it—controls the analysis in this case.

However, a related and equally accepted method of calculating damages exists, involving the consideration of "convoyed sales," i.e., including sales figures from patented and non-patented products if they are functionally inseparable. *Rite-Hite*, 56 F.3d at 1578 (Newman, J., concurring). In a convoyed sales analysis, the non-patented and patented items must not have separate markets; moreover, they will not be considered a functional unit if only sold together out of convenience or business strategy. *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1376 (Fed. Cir. 2015), cert. granted, judgment vacated sub nom. *Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc.*, 577 U.S. 1099 (2016), and opinion reinstated in part, 824 F.3d 1344 (Fed. Cir. 2016). Unlike the entire market value test, the convoyed sales analysis does not require a showing that the accused features of the patented product drives demand for the unpatented product sold alongside—despite Defendant's best efforts to inject that requirement into the present analysis.

The following cases are instructive in assessing the reliability of Bergman's application of the convoyed sales rule for calculating a royalty base.

In *Realtime Data LLC v. EchoStar Corp.*, the district court addressed the defendant's *Daubert* Motion to Exclude the Testimony of the plaintiff's damages expert, Dell. *Realtime Data LLC*, No. 6:17cv0084, 2018 WL 6266301, at *1 (E.D. Tex. Nov. 15, 2018). There, as here, the defendant alleged that Dell conducted a de facto entire market value rule analysis. However, the

court rejected defendant's interpretation of the analysis and noted Dell's use of a convoyed sales analysis instead. *Id*. at 6. The damages expert included convoyed sales from hardware sales, rentals, and leases, as well as sales from subscription revenue in the royalty base. *Id*. The district court denied the *Daubert* motion regarding the hardware sales since Dell demonstrated the functional relationship between the patented and non-patented products. *Id*. However, the court granted the *Daubert* motion regarding Dell's inclusion of the subscription services revenue in the royalty base because he failed to adequately identify the functional relationship that existed between the subscription service and the patented products. *Id*. at 7. The court determined that inclusion of this form of revenue went beyond the smallest stable patent-practicing unit requirement outlined by Federal Circuit precedent, it did not satisfy the convoyed sales requirements, and that it could not be included without converting the analysis to an entire market value calculation. *Id*. at 4 (citing *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018)). This case emphasizes the essential element of a functional relationship in qualifying for convoyed sales treatment with respect to royalty-calculation.

In *Biedermann Technologies GmbH & Co. KG v. K2M, Inc.*, the defendant argued that the plaintiff's damages expert invoked the entire market value rule and improperly included unpatented rods in the royalty base calculations along with the patented bone screws. No. 2:18cv585, 2012 WL 6034269, at *19–20 (E.D. Va. Dec. 10, 2021). While ultimately rejecting the damages expert's testimony for other reasons, the district court noted that the use of the unpatented rods with the patented bone screws did not have to meet the intent of the entire market value rule theory requirements outlined in *LaserDynamics*, since the expert did not invoke that theory. *Id*. at 20. Instead, the court noted that the damages expert used a comparable license theory predicated on built-in apportionment. *Id*. Though Defendant is correct that here, Mr.

Bergman did not use a comparable license theory when calculating damages, such as would render *Biederman* directly analogous, Defendant misses the thrust of the proposition contained within the case: that a methodology need not satisfy the entire market theory if an equally valid alternative damages calculation metric is applied in its stead.

Defendant similarly ignores the Special Master's citation to *Longhorn*, a case involving a similar challenge to Mr. Bergman's damages testimony, wherein the district court allowed Mr. Bergman to include non-infringing maintenance revenues as part of the royalty base due to the close relationship that existed between the infringing and non-infringing products. *Longhorn HD LLC v. Netscout Sys., Inc.*, No. 2:20cv349, 2022 WL 903934, at *4 (E.D. Tex. Mar. 27, 2022). The District Court for the Eastern District of Texas rejected the defendant's argument that inclusion of maintenance revenues would require satisfying the entire market value rule standards, and instead determined that Mr. Bergman correctly opined that any hypothetical negotiation would have considered both the revenue from the non-infringing maintenance products due to their close nexus, and the fact that they were non-infringing was not a reason to exclude Mr. Bergman's opinions on the hypothetical negotiation. *Id*. (citing *Deere & Co. v. Int'l Harvester Co.*, 710 F.2d 1551, 1558–59 (Fed. Cir. 1983)).

The Federal Circuit has also instructed as to when the convoyed sales approach is inapplicable, as in the case of *Warsaw Orthopedic, Inc. v. Nu-Vasive, Inc.*, where it determined that the plaintiff failed to prove the necessary functional relationship between the patented and non-patented products to render losses related to the non-patented product reasonably foreseeable. 778 F.3d 1365, 1375 (Fed. Cir. 2015), cert granted, judgment vacated sub nom. *Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc.*, 577 U.S. 1099, and opinion reinstated in part, 824 F.3d 1344 (Fed. Cir. 2016). In that case, the Federal Circuit distinguished between selling products together

for convenience or business strategy and selling products together that have a functionally necessary relationship. *Id*. at 1376. Additionally, the Federal Circuit noted how the plaintiff did not present evidence that the non-infringing products would not work without the patented items. *Id*. The court also pointed out that "[i]f the convoyed sale has a use independent of the patented device, that suggests a non-functional relationship." *Id*. at 1375 (citing *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1333 (Fed. Cir. 2009)).

This Court finds *Longhorn* and *Warsaw* highly instructive. In the present case, Mr. Bergman included the revenue of MicroStrategy's support and maintenance products in the royalty base calculations because they were sold together with the patented products in question. (Expert Report of J. Bergman, ¶¶ 138–40.) Specifically, Bergman cited to the fact that "customers are either required to purchase a standard one-year product support package or the standard product support is an embedded cost as part of the licensing model." (*Id*. ¶ 138 (citing Def.'s Resps. Pl.'s Interrogs.; Dep. Reza Virasteh).) Bergman further relied on the fact that users can only obtain access to new versions and software updates if they pay (either directly or through their licensing agreement) for a support package. (*Id*. ¶¶ 138–39 (citing Def.'s Resps. Pl.'s Interrogs.; Dep. Hugh Owen).) Thus, he determined that "there is a close functional relationship between MicroStrategy's product revenue and its maintenance revenue" and "[a]s a result, [he] included maintenance revenue in the royalty base." (*Id*. ¶ 140.)

Based on these statements, Plaintiff's expert demonstrates that the convoyed sale—the support package—has no use or market independent of the patented device, because it serves simply to prolong the lifespan of the patented products. A service package that provides updates and new versions is no use if someone does not have the underlying software. And vice versa: software that goes un-updated will eventually be rendered obsolete or compromised, supporting

the finding of a necessary functional relationship between the two products rather than just a strategic or convenience-driven pairing. While the Court acknowledges Defendant's argument that customers have the option not to purchase add-on service packages after their first year, the Court notes that such a choice cuts off access to software updates and new versions of the software. In other words, the software support package is essential to continued use of the most up-to-date version of the challenged product, and it is reasonable to include Defendant's so-called "renewal maintenance revenue" (i.e., revenue from support package purchases after the expiration of the required first year) among the convoyed sales figures, where cancellation of such support would lead to the obsolescence or incompatibility of the previously acquired product.

The above facts render the product relationship at issue here distinguishable from that in *Warsaw*, where the Federal Circuit found the purported convoyed sales did not have a sufficiently essential functional relationship to qualify for inclusion in the royalty base. Instead, the Court agrees with the district courts in *Longhorn* and *Biedermann* that permitted an expert to testify on the basis of a convoyed sales analysis, without satisfying the entire market rule, where there was a close functional relationship between the products and the follow-on sale of maintenance services would not occur without the sale of the allegedly infringing product. Accordingly, the Court will overrule the Defendant's objection on this issue.

## B. Apportionment with Respect to Patent '076

### 1. Special Master's Conclusion

The Special Master determined that Mr. Bergman's apportionment approach was not arbitrary with respect to Patent '076 (R&R 26–27.) The Special Master supported Bergman's conclusion as to the '076 Patent based on Bergman's consideration of multiple factors—including Defendant's own documents—and on the fact that Bergman relied on testimony from Plaintiff's

technical expert that supported an apportionment value greater than simply one-eighth of the accused product's value (and far greater than Defendant's suggested apportionment factor of 3.125%). (*Id*. at 26–27.) The Special Master noted that Defendant's various methodological challenges were more appropriate for cross-examination, rather than grounds for exclusion.

### 2. *Defendant's Objection*

Defendant characterizes Mr. Bergman's '076 apportionment calculations as impermissible "'black-box' apportionment where 'there's no specific math' underlying [the] apportionment figure." (Def.'s Obj. 11 (quoting *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2014 WL 1494247, at *4 (N.D. Cal. Apr. 16, 2014)).) Defendant further asserts that the duty lies with the Court to exercise its gatekeeping function to exclude such unreliable testimony and prevent it from reaching the jury. (*Id*. (citing *Virnetx Inc. v. Cisco Sys.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014)).) Defendant opposes the Special Master's support of Bergman's 20% apportionment calculation, noting that such support is largely based on Bergman's assertion that he used MicroStrategy's own documents as a basis for the figure, but the only documents Defendant could identify in support were a 2021 Form 10-K and a document entitled "What's New in MicroStrategy 10.10." (*Id*. at 13 n.7.) Defendant argues that Bergman (and therefore Plaintiff) has failed to demonstrate that he has reliably applied reliable principles and methods to the facts of the case, rendering his testimony inadmissible pursuant to Federal Rule of Evidence 702. (*Id*. at 13.)

### 3. *Plaintiff's Response*

Plaintiff emphasizes that Defendant ignores "several steps" Bergman took before reaching his 20% apportionment figure, and that these several steps help distinguish Bergman's analysis from the inadmissible analyses described in the caselaw Defendant relies upon. (Pl.'s Resp. 5–6.) Plaintiff further argues that, based on the well-reasoned analysis offered by Bergman, the

14

purported shortcomings Defendant highlights are more appropriately explored on cross-examination. (*Id*. at 7.)

*4. The Court's Ruling*

While cognizant of its gatekeeping role with respect to expert testimony, the Court finds that Mr. Bergman's apportionment figure for the '076 Patent is reliably achieved and not arbitrary, and his testimony on that subject should therefore be preserved for trial, where it can be challenged during cross-examination and/or counterbalanced by alternative expert testimony. *See U.S. v. Barnette*, 211 F.3d 803, 816 (4th Cir. 2000).

Bergman based his apportionment value for the '076 Patent on several factors, including an analysis of non-infringing alternatives, discussions with Plaintiff's technical expert (Dr. Malek), and documentation received from Defendant in discovery regarding the role and relative importance of the accused functionalities. (Bergman Expert Rep. ¶¶ 198–206.) He began by determining that, though the '076 Patent only "directly relates" to one of eight capabilities of Defendant's Client-Architect product—specifically, users' ability to create and manage environments—the security aspects of the '076 Patent actually relate to all eight capabilities, given that "security is a vital component of a reliable system." (*Id*. ¶ 200.) This generates a starting apportionment of somewhere above 12.5% (i.e., 1/8, representing the one-of-eight "directly relate[d]" capabilities). Bergman then posited that, because Defendant's challenged Workstation product prominently featured and advertised its security functionality (*see id*. at ¶¶ 202 (citing a document[5] and testimony received in discovery), 204 (citing Defendant's Form 10-K public investor disclosures repeatedly touting the platform's security)), "the ability to manage security is

---

[5] Presumably the "What's New in MicroStrategy 10.10" document Defendant references in its Objection, though the citation is only to a Bates number, so identification by the Court is impossible at this time.

a significant feature of the Workstation product," and the follow-on "benefits of increased security and reduced complexity flow through to the entire MicroStrategy Platform." (*Id*. ¶¶ 202–03.) Bergman even cited deposition testimony from Cezary Raczko, Executive Vice President for Defendant, wherein Raczko asserted that "if [MicroStrategy] did not have a rich security model then customers would be less likely to use it." (*Id*. ¶ 204.) Based on this tracing of the capabilities of the '076 Patent relative to the larger Workstation and Client-Architect products, and the resulting importance of security to the entire MicroStrategy Platform, and because of the apparent lack of non-infringing alternatives, Bergman calculated that parties to the hypothetical negotiation for the '076 Patent would have agreed to apportion to it 20% of the incremental profit attributable to Client-Architect (not the entire MicroStrategy Platform).

Although Bergman did not provide specific percentage-weights correlated to each additional value-add factor he identified to grow from 12.5% apportionment to his final 20% apportionment opinion, such "mathematical precision" is not required. *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1350 (Fed. Cir. 2018). What is required is that he articulate a methodology, including the facts contributing to his final figure, and distinguish between the technology's infringing and non-infringing features, *see GPNE Corp.*, 2014 WL 1494247, at *4; *NetFuel, Inc. v. Cisco Sys. Inc.*, No. 5:18cv02352, 2020 WL 1274985, at *6 (N.D. Cal. Mar. 17, 2020), all of which he did. Because of this, the Court declines to find that Bergman plucked the apportionment number out of thin air or otherwise utilized the sort of black-box method disfavored by the courts and the Federal Circuit, and the Court will therefore overrule Defendant's objection on this point.

Still on the topic of apportionment, however, and unaddressed in the R&R, Defendant does also raise the argument that, even if the court were to find (as it now has) that inclusion of convoyed

16

sales in the royalty base was appropriate, Bergman failed to analyze the extent customers used the convoyed support and maintenance services specifically in connection with the functionalities encompassed by the '076 and '172 Patents, and thus his apportionment testimony is materially deficient. (Def.'s Obj. at 9–10.) As a result, Defendant argues, Bergman's testimony is overbroad, misleading, and unreliable, and should therefore be excluded. The Court once again disagrees. For the same reasons it found that the primary infringing product and the support packages shared the necessary functional relationship to permit a convoyed sales analysis, the Court finds that no further apportionment is needed with respect to the support package revenues. Nothing in the record suggests customers purchased support packages with a specific eye toward securing support for one functionality but not another, or again that they would ever have bought the support package without first buying the accused product. Because the very principle underlying a convoyed sales analysis is that the products are so functionally necessary to each other that their sales should be considered jointly for purposes of calculating the royalty base, the Court holds that it was not unreasonable for Bergman to apply the same apportionment factors to both the product licenses and their associated support packages. Defendant remains free to cross Mr. Bergman on that issue and others, should the matter go to trial.

**C. Consideration of MicroStrategy 7i in the Royalty-Apportionment Analysis**

    *1. Special Master's Conclusion*

The final challenged portion of the R&R is the Special Master's recommendation to deny Defendant's Motion to Exclude as to its argument that Mr. Bergman's apportionment approach was faulty for failing to apportion-out the value of Defendant's non-infringing prior art product, MicroStrategy 7i. (R&R 28–30.) The Special Master concluded that Mr. Bergman properly accounted for "non-infringing alternatives when valuing the patent invention" and further that

Bergman was entitled to rely on the determination by Plaintiff's technical expert, Dr. Malek, that there were in fact no non-infringing alternatives to the '172 and '076 patents. (*Id*. at 28–29.)

    *2. Defendant's Objection*

Defendant argues that the Special Master's recommendation is contrary to Federal Circuit precedent requiring courts to ensure that damages testimony "value only the patentee's invention and not any 'conventional elements.'" (Def.'s Obj. 15 (quoting *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 132, 1338 (Fed. Cir. 2015)).) Defendant challenges the Special Master's position that Mr. Bergman was "entitled to ignore MicroStrategy 7i . . . [and] 'assume[] there were no acceptable non-infringing alternatives'" (*id*. (quoting R&R 28–29)) and posits that "the Court legally must determine whether Mr. Bergman considered and accounted for the conventional (non-patented) elements of MicroStrategy's product, including those embodied in MicroStrategy's predecessor product '7i' that provided essentially the same functionality as the Asserted Patents." (*Id*. at 15.) Defendant provides several excerpts from Mr. Bergman's deposition testimony to demonstrate that his failure to consider and evaluate MicroStrategy 7i as a non-infringing alternative renders his expert opinion "legally unreliable." (*Id*. at 15–17.)

    *3. Plaintiff's Response*

Plaintiff rebuts Defendant's characterization of the Special Master's conclusion, that "Mr. Bergman 'was entitled to ignore MicroStrategy 7i,'" as "simply not true." (Pl.'s Resp. 7 (quoting Def.'s Obj. 14).) In support, Plaintiff recited the Special Master's findings: that Bergman "opined that MicroStrategy 7i did not provide the same functionality as the patented technologies," and that "[t]his understanding came from Mr. Bergmans's discussions with Daedalus's technical expert, Dr. Malek." (*Id*. (citing R&R).) Plaintiff further echoes the Special Master's assertion that damages experts are entitled to rely on the opinions of technical experts, and that Defendant is

18

estopped from discrediting those technical opinions where it did not challenge them independently. (*Id*. at 7–8.)

### 4. The Court's Ruling

The Court is not persuaded by Defendant's characterization of either Mr. Bergman's testimony or the Special Master's analysis. Defendant would have the Court hold Bergman to the standard of a technical expert by requiring that he independently opine on the functionality of MicroStrategy 7i product relative to the accused functionalities and the '076 and '172 Patents, where doing so falls entirely outside the scope of his designation as a damages expert. Rather, the Court agrees with the Special Master and Plaintiff, that Bergman is entitled to rely on the opinion of Dr. Malek as to the respective functionalities of the various products in question. *Apple v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) ("Consistent with Rule 703, patent damages experts often rely on technical expertise outside of their field . . . ."), overruled on other grounds by *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015); *see also DataQuill Ltd. v. High Tech Comput. Corp.*, 887 F. Supp. 2d 999, 1026 (S.D. Cal. 2011) ("It is routine and proper for a damages expert in a technical patent case to rely on a technical expert for background."). And, particularly where Defendant did not raise any *Daubert* challenges to Dr. Malek's report or testimony, the Court finds no reason that Bergman would not be entitled to rely on Dr. Malek's opinion that there were no "next-best" non-infringing alternatives to evaluate that would provide the same precise functionalities. (Expert Report of J. Bergman ¶¶ 129–30.) Accordingly, Bergman did not "ignore" MicroStrategy 7i for apportionment purposes so much as he considered all non-infringing alternatives identified by MicroStrategy, plus the testimony of Dr. Malek, and resultingly determined that there were no valid alternatives to evaluate. (*See id*. at ¶ 129.)

Finally, the Court notes that Bergman reserved his right to respond to any subsequently identified non-infringing alternatives proposed by Defendant's damages or technical expert(s). (*Id*. at 14, n.202.) To the extent that Defendants' experts will testify that MicroStrategy 7i should be considered a non-infringing alternative and Defendant wishes to cross Bergman about alternative calculations apportioning-out the product's corresponding value, that opportunity remains open. *See United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)) (noting that a finding of admissibility "does not mean that [expert testimony] is not subject to contradiction," and highlighting that opposing parties may offer contrary experts, question experts during cross-examination, and allow the factfinder to give decide how much weight to give the testimony).

Accordingly, after reviewing the record and the parties' briefs, the Court finds that Bergman's report is not deficient as a matter of law for having not apportioned-out the value of the MicroStrategy 7i product from his royalty calculations. The Court will therefore overrule Defendant's Objection and adopt the Special Master's recommendation to deny the Motion to Exclude Mr. Bergman's damages calculation with respect to his apportionment calculations.

## CONCLUSION

For the reasons set forth above, the Court will overrule Defendant's Objection to the Special Master's R&R as to Bergman's royalty base and apportionment analyses. Having found no clear error in the Special Master's other findings and conclusions, the Court will accordingly adopt the Special Master's R&R and will deny Defendant's Motion to Exclude.

An appropriate Order shall accompany this Memorandum Opinion.

Richmond, Virginia  
Date: August 28, 2023

/s/  
Roderick C. Young  
United States District Judge