IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| DAEDALUS BLUE, LLC, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | Civil Action No. 2:20CV551 (RCY) |
| | ) | |
| MICROSTRATEGY INCORPORATED, | ) | |
|     Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff Daedalus Blue, LLC's ("Plaintiff" or "Daedalus") Motion for Summary Judgment (ECF No. 121) and the Special Master's Report and Recommendation concerning the same (ECF No. 306). The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will adopt-in-part and reject-in-part the Special Master's Report and Recommendation. In turn, the Court will grant-in-part and deny-in-part Plaintiff's Motion for Summary Judgment.

## I. BACKGROUND

At the outset, the Court notes that both Plaintiff's Brief in Support of its Motion for Summary Judgment and its Brief in Opposition to Defendant's Motion for Summary Judgment include specifically captioned sections listing all material facts that Plaintiff contends are undisputed or genuinely in dispute, respectively, as required by E.D. Va. Loc. Civ. R. 56(B)[1] and

---

[1] Local Rule 56(B) provides:

Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. A brief in response to such a motion shall include a specifically captioned section listing all material facts

consistent with Fed. R. Civ. P. 56(c)(1). Defendant includes similar sections in its respective summary judgment briefing as well. Under the Local Rules, the Court may accept those facts identified by the movant as undisputed to be admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion and supported by reference to record evidence. E.D. Va. Loc. Civ. R. 56(B).

The Court has concluded that the following narrative represents the undisputed facts for the purpose of resolving the present[2] Motion for Summary Judgment:

## A. Factual Background

The United States Patent and Trademark Office ("PTO") issued United States Patent No. 8,341,172 ("the '172 Patent") on December 25, 2012. Pl.'s Mem. Supp. Mot. Summ. J. 8-9 ("Pl.'s Mem. Supp."), ECF No. 121.; Def.'s Mem. Opp'n Summ. J. ("Def.'s Opp'n") 8, ECF No. 142.[3] The PTO issued United States Patent No. 9,032,076 ("the '076 Patent") on May 12, 2015. Pl.'s Mem. Supp. 9; Def.'s Opp'n 8. The '172 Patent and the '076 Patent were originally developed by the International Business Machines Corporation ("IBM"). Pl.'s Mem. Supp. 20; Def.'s Opp'n 12. Plaintiff is the current owner of the two patents, following IBM's assignment of the patents in late January 2020. Pl.'s Mem. Supp. 20; Def.'s Opp'n 12.

---

as to which it is contended that there exists a genuine issue necessary to be litigated *and citing the parts of the record relied on to support the facts alleged to be in dispute.* In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

E.D. Va. Loc. Civ. R. 56(B) (emphasis added). This practice is consistent with the 2011 amendments to the Federal Rules of Civil Procedure, which require the parties to support their factual assertions by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c); *see also Campbell v. Verizon Virginia, Inc.*, 812 F. Supp. 2d 748, 759 n.5 (E.D. Va. 2011) (discussing 2011 amendments to Rule 56), aff'd 474 F. App'x 167 (4th Cir. June 18, 2012).

[2] Although Defendant also filed its own Motion for Summary Judgment (ECF No. 119), the parties' motions seek summary judgment on entirely distinct issues. As a result, the Court will analyze them separately, rather than as cross-motions.

**[3]** For this and all other filings, the Court utilizes the pagination assigned by the CM/ECF system and not the pagination appearing on the original document.

The '172 Patent discloses a system for data aggregation.  (Pl.'s Mem. Supp. Mot. Summ.

J. 9–10; Def.'s Mem. Opp'n Summ. J. 8.)  Claim 1 of the '172 Patent reads, in pertinent part:

1. A system for generating aggregate data values from data stored in a data source, comprising:
   A processor;
   A database service available in a network environment, the database service comprising
       (a) a data source,
       (b) an abstract data layer, wherein the abstract data layer comprises a plurality of logical fields used to compose an abstract query to query the data source, and for each logical field, providing an access method specifying at least a method for accessing the data, wherein at least one logical field specifies an aggregate access method, wherein the aggregate access method specifies a set of input data and an expression for determining an aggregate data value from the set of input data; and
       (c) a runtime component configured to process an abstract query that includes the at least one logical field by
           (i) retrieving a definition for the aggregate access method,
           (ii) determining aggregate data values according to the definition,
           (iii) merging the aggregate data values with query results obtained for logical fields, other than the at least one logical field, including in the abstract query, and
           (iv) returning the results to the requesting entity.

Pl.'s Mem. Supp. 9–10; Def.'s Opp'n 8.  Claims 2 and 4-6 of the '172 Patent are dependent on

claim 1.  Pl.'s Mem. Supp. 10; Def.'s Opp'n 8.  Claim 7 of the '172 Patent reads:

A computer-readable storage medium, that when executed by a processor performs operations comprising:

providing, for a requesting entity, an abstract data layer comprising a plurality of logical fields for composing an abstract query, and for each logical field:

defining an access method that specifies at least a method for accessing the data corresponding to the logical field, wherein at least one logical field specifies an aggregate access method for accessing the data corresponding to the at least one logical field, wherein the aggregate access method specifies a set of input data and an expression for determining an aggregate data value from the set of input data;

receiving, from the requesting entity, an abstract query that includes the at least one logical field specifying an aggregate access method;

retrieving a set of input data defined by the aggregate access method;

determining at least an aggregate data value from the set of input data;

3

transforming each logical field, other than the at least one logical field, included in the abstract query into a query contribution that is consistent with the data source specified by the access method for each logical field;

accessing the data source corresponding to each of the above logical fields using the query contribution and retrieving a set of query results data; and

returning, to the requesting entity, the at least one aggregate data value and the set of query results data.

Pl.'s Mem. Supp. 10; Def.'s Opp'n 8.

The '076 Patent discloses role-based access control systems and methods, as well as a computer access-control program.  Pl.'s Mem. Supp. 10; Def.'s Opp'n 9.  Claim 1 of the '076 Patent reads:

1. A role-based access control system, comprising:

a role definition system for defining roles to be sets of permissions on individual resources thus forming role instances, respectively;

a super role definition system for defining at least one super role by assigning at least one set of role instances to at least one group and assigning the at least one group to the at least one super role, wherein each super role is modified by adding or removing the role instances from the at least one group, and wherein each super role is nested according to a plurality of properties including a name, a parent role, the set of role instances, and an externalisation state;

and a super role assignment system for assigning a user or a user group to the at least one super role.

Pl.'s Mem. Supp. 11; Def.'s Opp'n 9.  Claims 2–3 and 5 of the '076 Patent are dependent on claim 1.  Pl.'s Mem. Supp. 11; Def.'s Opp'n 9.  Claim 6 of the '076 Patent reads:

6. A role-based access control method, comprising:

defining roles to be sets of permissions on individual resources, thus forming role instances, respectively;

assigning at least one set of role instances to at least one group and assigning the at least one group to at least one super role; and

nesting each super role according to a plurality of properties including a name, a parent role, the set of role instances, and an externalisation state, wherein each super role is modified by adding or removing the role instances from the at least one group.

Pl.'s Mem. Supp. 11; Def.'s Opp'n 9.  Claims 7-9 and 11 of the '076 Patent are dependent on claim

6.  Pl.'s Mem. Supp. 11; Def.'s Opp'n 9.  Finally, claim 12 of the '076 Patent reads:

> 12. A computer program product stored on a non-transitory computer-readable storage medium which when executed by a computer, causes the computer to control access, the controlling comprising:
>
> defining roles to be sets of permissions on individual resources, thus forming role instances, respectively;
>
> assigning at least one set of role instances to at least one group and assigning the at least one group to at least one super role; and
>
> nesting each super role according to a plurality of properties including a name, a parent role, the set of role instances, and an externalisation state, wherein each super role is modified by adding or removing the role instances from the at least one group.

Pl.'s Mem. Supp. 12; Def.'s Opp'n 9.  Claims 13–15 of the '076 Patent are dependent on claim

12.  Pl.'s Mem. Supp. 11; Def.'s Opp'n 9.

MicroStrategy Incorporated ("Defendant" or "MicroStrategy") is a company in the business of selling analytics software and services.  Compl. ¶ 29; ECF No. 1; Answer ¶ 29, ECF No. 34.  One of MicroStrategy's offerings is the MicroStrategy Platform.  *Id.*  The MicroStrategy Platform includes functionalities that aggregate date values from data stored in a database.  Compl. ¶ 36; Answer ¶ 36.  The MicroStrategy Platform also includes the MicroStrategy Intelligence Server, which is involved in processing queries of relevant databases.  Pl.'s Mem. Supp. 14–15; Def.'s Opp'n 9–10.  The relevant iteration of the MicroStrategy Platform is MicroStrategy 7.5 (which is referred to by the parties interchangeably as both "MicroStrategy 7.5" and "MicroStrategy 7i").[4]  Pl.'s Mem. Supp. 12–14; Def.'s Opp'n 9.  According to MicroStrategy, the MicroStrategy 7.5 Platform was first released on November 18, 2003.  Pl.'s Mem. Supp. 14; Def.'s Opp'n 9.

---

[4] For the sake of clarity, the Court will only refer to this product as MicroStrategy 7.5.

**B. Relevant Procedural History**

Plaintiff filed a Complaint on November 4, 2020, alleging that MicroStrategy 7.5, among other MicroStrategy products, infringes on the '172 and '076 Patents.  ECF No. 1.  After initially filing a Motion to Dismiss for Failure to State a Claim, ECF No. 19, on December 30, 2020, Defendant filed an Answer on February 1, 2021.  ECF No. 34.  Claim construction was finalized via Memorandum Opinion and Order on March 9, 2022.  ECF Nos. 84 and 85.  After myriad discovery motions and extensive briefing, this case is now at the summary judgment stage.

On November 15, 2022, this Court re-appointed Joshua J. Yi, PhD, as Special Master to assist the Court in deciding several pending motions from the parties, including Plaintiff's Motion for Summary Judgment.  ECF No. 250.  The Special Master issued a Report and Recommendation ("R&R") regarding Plaintiff's Motion for Summary Judgment on July 17, 2023.  ECF No. 306.  In that R&R, the Special Master recommended the Court grant-in-part and deny-in-part Plaintiff's Motion for Summary Judgment.  R&R 1–2.  Defendant filed an objection to the Special Master's R&R on August 14, 2023.  ECF No. 317.  Plaintiff filed its Response to Defendant's Objection ("Pl.'s Resp."), ECF No. 324, on August 31, 2023, and Defendant filed its Reply in support of its Objection on September 6, 2023.  ECF No. 326.

## II.  STANDARD OF REVIEW

**A.  Review of Special Master's Report and Recommendation**

When reviewing a party's timely objection to a special master's report and recommendation, the Court must decide *de novo* any objections to the Special Master's factual findings.  Fed. R. Civ. P. 53(f).  Similarly, the Court must decide *de novo* any objections to conclusions of law recommended by the Special Master.  *Id*.  "In acting on a master's order . . . the Court may adopt or affirm, modify, wholly or partly reverse, or resubmit to the master with

instructions." *Id.* Any non-objected-to portions of the Special Master's Report and Recommendation are reviewed for clear error. *See, e.g., Strauch v. Computer Scis. Corp.*, No. 3:14-CV-956 (JBA), 2019 WL 7602150, at *2 (D. Conn. Aug. 6, 2019) (reviewing non-objected-to portions of Special Master's report and recommendation for clear error); *Seggos v. Datre*, No. 17-CV-2684 (SJF)(ARL), 2019 WL 3557688, at *2 (E.D.N.Y. Aug. 5, 2019) (same); *Andrews v. U.S. Pipe & Foundry Co.*, No. 2:06-cv-1645-RDP, 2009 WL 10703074, at *2 (N.D. Ala. Aug. 5, 2009) (applying the clearly erroneous standard to a Special Master's unobjected-to report and recommendation).

**B. Rule 56: Summary Judgment**

Federal Rule of Civil Procedure Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986). The evidence must be viewed "in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Moreover, the determination of "whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 255. Thus, where a "clear and convincing" evidence requirement would apply at trial—for instance, when assessing certain affirmative defenses—it also applies when reviewing the evidentiary record at the summary judgment stage. *Id.* at 255–56. That is, the appropriate summary judgment question in such circumstances becomes

whether the evidence in the record could support a jury finding that the assertion or defense in question has been shown by clear and convincing evidence. *Id.*

When, as here, both parties have moved for summary judgment, the Court must review "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Republic W. Ins. Co. v. Williams*, 212 Fed. App'x. 235, 237 (4th Cir. 2007). "The fact that both sides moved for summary judgment does not establish that there is no issue of fact and require that judgment be granted for one side or the other." *Am. Fid. & Cas. Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (4th Cir. 1965).

### III. DISCUSSION

Plaintiff has moved for summary judgment as to various defenses raised by the Defendant. *See* Pl.'s Mem. Supp. 1–2. Special Master Yi helpfully summarized the contours of the Plaintiff's Motion—as well as his recommended resolution of each discrete issue—in the following chart:

| Figure 1 | | |
|---|---|---|
| **Issue** | **'172 Patent** | **'076 Patent** |
| **MicroStrategy 7.5 Product (102(a))** | Deny | Grant |
| **MicroStrategy 7.5 Product (102(g)(2))** | Deny | Grant |
| **MicroStrategy 7.5 Product (102(b))** | Grant | Grant |
| **MicroStrategy 7.5 Documentation** | Grant | Grant |
| **Indefiniteness** | N/A | Grant |
| **Marking and Notice** | Grant | Deny (but Plaintiff is barred from recovering pre-suit damages between July 23, 2020, and November 9, 2020 |
| **Prosecution History Estoppel** | Grant | Grant |
| **Government Use** | Grant | Grant |
| **Written Description and Enablement** | Grant | Grant |
| **License and Patent Exhaustion** | Grant | Grant |
| **Waiver, Estoppel, and Unclean Hands** | Grant | Grant |

R&R 2. While Defendant filed several objections to the Special Master's R&R, most of the recommendations therein are uncontested. *See* Def.'s Obj. 1–3, 18. Specifically, Defendant

objects to only four of the recommendations, all pertaining to the '076 Patent.  *See id.*  Defendant

presented these objections in the chart below ("Figure 2"):

| Figure 2 | |
|---|---|
| **Issue** | **'076 Patent** |
| **MicroStrategy 7.5 Product (102(a))** | Grant → DENY |
| **MicroStrategy 7.5 Product (102(g)(2))** | Grant → DENY |
| **MicroStrategy 7.5 Documentation** | Grant → DENY |
| **Indefiniteness** | Grant → DENY |

Def.'s Obj. 18.  Given the differing standards of review for contested and uncontested special

master recommendations, the recommendations will be analyzed separately beginning with those

that are uncontested.

**A. Whether the Special Master's Uncontested Findings Regarding the '172 and '076 Patents Should Be Adopted**

    1. Special Master's Conclusion

        The Special Master made the following recommendations concerning Plaintiff's Motion

for Summary Judgment; unless otherwise noted, the recommendations face no objections:

| Figure 3 | | |
|---|---|---|
| **Issue** | **'172 Patent** | **'076 Patent** |
| **MicroStrategy 7.5 Product (102(a))** | Deny | *Contested* |
| **MicroStrategy 7.5 Product (102(g)(2))** | Deny | |
| **MicroStrategy 7.5 Product (102(b))** | Grant | |
| **MicroStrategy 7.5 Documentation** | Grant | |
| **Marking and Notice** | Grant | Deny (but bar Plaintiff from recovering pre-suit damages between July 23, 2020 and November 9, 2020) |
| **Prosecution History Estoppel** | Grant | Grant |
| **Government Use** | Grant | Grant |
| **Written Description and Enablement** | Grant | Grant |
| **License and Patent Exhaustion** | Grant | Grant |
| **Waiver, Estoppel, and Unclean Hands** | Grant | Grant |

*See* R&R 1–2; Def.'s Obj. 1–3, 18.

Beginning with the '172 Patent and Defendant's 35 U.S.C. §§ 102(a) and 102(g)(2) defenses (the anticipation/prior art defenses), the Special Master recommended denying Plaintiff's Motion for Summary Judgment as to these issues.  R&R 1–2.  As to the § 102(a) defense, The Special Master walked through the relevant evidence, and eventually concluded that the Defendant had provided sufficient evidence to create an issues of fact as to whether the claim limitations at issue were publicly available as part of the MicroStrategy 7.5 product prior to the '172 Patent.  *Id.* at 13–19.  The Special Master conducted a similar process with regard to the § 102(g)(2) defense, ultimately finding that the Defendant had once again provided sufficient evidence to defeat a summary judgment motion on this issue.  *Id.* at 24–26.  In coming to this conclusion, the Special Master noted that (1) some of the material facts are disputed as to this issue, and (2) the only evidence in the record supports a finding that MicroStrategy 7.5 was in fact not abandoned, suppressed, or concealed prior to the '172 Patent.  *Id.*  The Special Master's recommendations regarding summary judgment on these issues are not challenged by either party.  *See* Def.'s Obj. 1–3, 18.

Moving on, the Special Master recommended granting Plaintiff's Motion for Summary Judgment as to the anticipation defense made pursuant to § 102(b) for the '172 Patent.  R&R 31.  The Special Master disposed of this issue quickly, noting that "Defendant concedes that the MicroStrategy 7.5 product does not constitute § 102(b) prior art to the '172 Patent."  *Id.* at 30–31.  The Special Master likewise recommended granting Plaintiff's Motion for Summary Judgment as to Defendant's documentation anticipation defense for the '172 Patent.  *See id.* at 36.  This recommendation was based on the Special Master's finding that Defendant did not explicitly make an anticipation argument based solely on MicroStrategy 7.5 documentation.  *See id.*  Neither party

10

has challenged the Special Master's recommendations regarding summary judgment on either of these issues.  *See* Def.'s Obj. 18.

The Special Master next considered Defendant's affirmative defenses of marking and notice for both the '172 and '076 Patents.  R&R 41.  Regarding the '172 Patent, the Special Master noted that "Defendant did not meet its initial burden of production" for these defenses, rendering summary judgment appropriate.  *Id.* at 43.  As for the '076 Patent, the Special Master found that Defendant did indeed meet its initial burden of production by pointing to certain licensed products that should have been marked.  *Id.* at 44.  Further, the Special Master found that Plaintiff did not meet its concurrent burden to plead compliance with 35 U.S.C. § 287.  *Id.* at 43–44.  As a result, the Special Master recommended denying this portion of the Plaintiff's Motion for Summary Judgment.  *Id.* at 44–45.  However, the Special Master simultaneously recommended that Plaintiff be barred from recovering pre-suit damages between July 23, 2020 and November 9, 2020.  *Id.* at 45.  This recommendation was based upon the fact the licensee in question—Oracle—only became a licensee on July 23, 2020, and because Defendant received actual notice that it may have infringed the relevant patents on November 9, 2020.  *Id.*  No objections were made to either portion of this recommendation.  *See* Def.'s Obj. 1–3, 18.

The next two defenses—prosecution history estoppel and government use—can be considered together for present purposes.  After reviewing the record, the Special Master found that Defendant did not produce sufficient evidence to generate a material issue of fact as to the applicability of either of these defenses.  R&R 45–49.  Regarding the former, Defendant would have had to point to prior admissions, amendments, and/or statements made to the USPTO.  *See Festo Corp. v. Shoketsu Kinzoku Kogyu Kabushiki Corp.*, 535 U.S. 722, 734 (2002).  Defendant failed to do so, rendering summary judgment appropriate.  R&R 46–47.  As to the latter defense

of government use, the Special Master noted that Defendant would have had to provide evidence

that the infringing device was manufactured for the government, or that the government authorized

or consented to the manufacture of the device.   R&R 47–49.   The Special Master found that

Defendant failed to do so, rendering summary judgment appropriate as to this defense as well.  *Id.*

No objections were made to either of these recommendations.  *See* Def.'s Obj. 1–3, 18.

As to the final three issues—written description and enablement, license and patent

exhaustion, and waiver, estoppel, and unclean hands—the Special Master simply noted that the

Defendant essentially conceded summary judgment as to these defenses.   R&R 4.   In fact,

Defendant indicated that Plaintiff's summary judgment motion as to these affirmative defenses

amounted to nothing more than "cleaning up the pleadings" by seeking judgment on defenses not

pursued by Defendant in expert discovery.  R&R 4.  Defendant did not object to this framing.  *See*

Def.'s Obj. 1–2, 18.

2. Court's Ruling

Any unobjected-to portions of the Special Master's Report and Recommendation are

reviewed for clear error.  *See, e.g., Strauch v. Computer Scis. Corp.*, No. 3:14-CV-956 (JBA), 2019

WL 7602150, at *2 (D. Conn. Aug. 6, 2019) (reviewing non-objected-to portions of Special

Master's report and recommendation for clear error); *Seggos v. Datre*, No. 17-CV-2684

(SJF)(ARL), 2019 WL 3557688, at *2 (E.D.N.Y. Aug. 5, 2019) (same); *Andrews v. U.S. Pipe &*

*Foundry Co.*, No. 2:06-cv-1645-RDP, 2009 WL 10703074, at *2 (N.D. Ala. Aug. 5, 2009)

(applying the clearly erroneous standard to a Special Master's unobjected-to report and

recommendation).  A review of the record reveals no clear error in the unobjected-to portions of

the R&R.  The Court will therefore adopt the uncontested portions of the Special Master's R&R

outlined above.

**B. Whether the Special Master's Objected-To Recommendations Regarding the '076 Patent Should Be Adopted**

Defendant objected to four of the Special Master's recommendations, all pertaining to the '076 Patent.  Def.'s Obj. 1–3, 18.  Defendant's four objections are outlined above, *supra* Figure 2, and dealt with in turn below.

1. Applicability of the §§ 102(a), 102(g)(2), and Documentation Anticipation Defenses Regarding the '076 Patent

*a. Special Master's Recommendation*

The Special Master concluded that "the MicroStrategy 7.5 product is not § 102(a) prior art and/or the MicroStrategy 7.5 product does not anticipate the nesting limitations in the '076 Patent." R&R 20.  The Special Master found similarly with regard to Defendant's § 102(g)(2) prior art defense.  *Id.* at 25–26.  Based on these conclusions, the Special Master recommended that Plaintiff be granted summary judgment as to these potential anticipation defenses.

In reaching this conclusion, the Special Master made several main findings.  First, the Special Master took issue with the fact that Defendant's anticipation evidence largely came from the MicroStrategy 7.5 Administration Guide and source code.  *Id.* at 20.  The Special Master found that both of these were irrelevant and may not be considered with regard to this anticipation defense.  *Id.* at 20–21.  Per the Special Master, these pieces of evidence were irrelevant because the former was a separate reference to the MicroStrategy 7.5 product, and the latter was confidential, nonpublic information.  *Id.*  The Special Master also indicated that certain citations and arguments raised by Defendant pertain to a different limitation altogether, also rendering this defense inapposite.  *Id.*  Finally, the Special Master stated that the screenshots provided by Defendant, without the context provided by the other irrelevant evidence, are insufficient to show that the MicroStrategy 7.5 platform operates in the same manner as the patented product.  *Id.*

Absent such a showing, the Special Master found that an anticipation defense cannot stand.  *Id.*
The Special Master applied the same reasoning to reach his conclusion regarding Defendant's
potential 102(g)(2) defense as well.  *Id.* at 26.

        *b. Defendant's Objections*

      Defendant argues that the Special Master's recommendations regarding the §§ 102(a) and
102(g)(2) defenses should be rejected "because they rely on an erroneous holding that product
manuals cannot be used as evidence of a product's operation for anticipation."  Def.'s Obj. 8.
Defendant further argues that, "[w]ith the full evidence considered . . . this Court should . . . deny
Daedalus' motion as to '076 validity under 102(a) and 102(g)(2)."  *Id.*  Defendant bolsters its
position by providing caselaw purporting to show that secondary materials about a product,
including product manuals and other documentation, may be relied upon as evidence of how the
prior art product worked for anticipation purposes.  *Id.* at 4 (citing, *e.g.,* 3 ANNOTATED PATENT
DIGEST § 17:141.50; *IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 518–19 (D.
Del. 2022); *Finjan, Inc. v. Symantec Corp.*, No. 10-CV-593 (GMS), 2013 WL 5302560, at *12–
13 (D. Del. Sept. 19, 2013)).  Defendant also objected to the Special Master's failure to consider
the confidential source code, noting that "source code is 'frequently used as evidence for
invalidity,'" even where it is confidential.  (Def.'s Obj. 8 (quoting *Uniloc 2017 LLC v. Google
LLC*, Case No. 2:18-cv-00504-RSP (E.D. Tex. Dec. 4, 2019)).

      Defendant continues its attack on the Special Master's §102(a) and § 102(g)(2) anticipation
recommendations by arguing that the MicroStrategy documentation in question is "not even a
secondary source of information," as it was actually shipped with—and is part of—the product
itself.  *Id.* at 7.  Defendant argues that such contemporaneous product manuals must be considered.
*Id.* (citing *Finjan*, 2013 WL 5302560 at *12).

Defendant also argues that the Special Master's recommendations will lead to irreconcilable holdings based on the same evidence. *Id.* at 14. Specifically, Defendant notes that the same evidence was cited for both infringement and invalidity, and that the conclusions on both would presumably be consistent. *Id.* Instead, the Special Master found a fact issue on the infringement side concerning the "nesting limitation" and recommended denying Defendant's Motion for Summary Judgment. Defendant argues it is therefore impossible for the Special Master to simultaneously conclude that no fact issues exist on the invalidity side concerning the same nesting limitation. *Id.*

### c. Plaintiff's Response

In its Response to Defendant's Objections, Plaintiff first argues that Defendant waived the ability to argue that MicroStrategy 7.5 manuals should be considered part of the product. Pl.'s Resp. 4. Plaintiff contends that, "[h]aving failed to properly raise this argument before the Special Master, MicroStrategy has waived it." *Id.* (citing *Biolumix, Inc. v. Centrus Int'l, Inc.*, No. 08-11418, 2012 WL 6015896, at *12 (E.D. Mich. Dec. 3, 2012); *Aladdin Mfg. Corp. v. Brumlow Mills, Inc.*, No. 4:19-cv-00058-WMR, 2021 WL 1937315, at *8 (N.D. Ga. Mar. 1, 2021)). Plaintiff notes that none of the myriad cases cited in Defendant's Objection, *see* Def.'s Obj. 4, were cited in Defendant's original opposition to Plaintiff's summary judgment motion. Pl.'s Resp. 5. Finally, Plaintiff argues that Defendant's purportedly new argument is not adequately supported regardless, insofar as Defendant has not sufficiently shown that the product manuals were actually shipped together with the product. Pl.'s Resp. 5.

### d. The Court's Analysis

Reviewing the Special Master's recommendations *de novo*, the Court finds that documentary evidence such as the product manuals should have been considered, and therefore

15

declines to adopt this portion of the Special Master's recommendations.  Instead, the Court will deny Plaintiff's Motion for Summary Judgment as to the Defendant's §§ 102(a) and 102(g)(2) anticipation defenses.

Under pre-America Invents Act ("pre-AIA") 35 U.S.C. § 102(a),[5] a patent claim is invalid for anticipation if "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent."   35 U.S.C. §102(a) (2011).   The phrase "known or used" refers to "knowledge or use which is accessible to the public."  *BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 964 (Fed. Cir. 2020).  Pre-AIA 35 U.S.C. § 102(g)(2) provides similar restrictions, rendering patent claims invalid for anticipation where, "before [the patentee's] invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it."  35 U.S.C. § 102(g)(2) (2011).  To prove that a claim is invalid for anticipation, "'the accused infringer must show by clear and convincing evidence that a single prior art reference discloses each and every element of a claimed invention.'"  *K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1377 (Fed. Cir. 2012) (quoting *Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 796 (Fed. Cir. 2010)).

The primary issue with regard to Defendant's §§ 102(a) and 102(g)(2) anticipation defenses relates to whether the alleged prior art—MicroStrategy 7.5—was publicly available.  *See, e.g.,* Pl.'s Mem. Supp. 23; Def.'s Opp'n 16; R&R 12.  If MicroStrategy 7.5 and its relevant functionalities were publicly available prior to the invention of the '076 Patent, then the anticipation defense should be available.  If not, the defendant cannot assert an anticipation

---

[5] The '076 Patent has a filing date prior to the March 16, 2013, effective date of the America Invents Act ("AIA").  As a result, the applicable law is pre-AIA 35 U.S.C. § 102.  *See* America Invents Act § 3, Pub. L. No. 112-29, 125 Stat. 284 (2011); *Blue Calypso, LLC v. Groupon, Inc.*, 815 F. 3d 1331, 1341 n.4 (Fed. Cir. 2016).

defense, and summary judgment should be granted to the Plaintiff as to these defenses.  Plaintiff contends that the prior art was not publicly available because the relevant functionality—where each super role is "nested according to a plurality of properties including . . . an externalization state"—can only be found in source code that was never released to the public.  Pl.'s Mem. Supp. 26.  Defendant responds that the anticipatory functionality was indeed available to the public both via operation of MicroStrategy 7.5 as well as its accompanying documentation, which shows what users see when they run the product.  Def.'s Opp'n 16.; Def.'s Obj. 4, 8.  To the extent Defendant's expert relied on confidential source code to corroborate the anticipatory functionality, Defendant claims it was proper to do so based on Federal Circuit precedent.  *See* Def.'s Opp'n 16–17 (citing *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997); *Netscape Commc'ns. Corp. v. Konrad*, 295 F.3d 1315, 1323 (Fed. Cir. 2002)).  Plaintiff disagrees.  *See, e.g.*, Pl.'s Mem. Supp. 26; Pl.'s Resp. 6.

The parties (and the Special Master) do not appear to dispute that the product manuals and guides may provide evidence of MicroStrategy 7.5's features.  *See* R&R 12; Pl.'s Mem. Supp. 26; Def.'s Opp.'n 16.  Moreover, the parties appear to agree that such features, if public, could potentially be an anticipating prior art reference.  *See* R&R 12; Pl.'s Mem. Supp. 26; Def.'s Opp.'n 16.  Therefore, this portion of the dispute simply boils down to the following: whether evidence of the product manuals and guides may be considered in combination with the product itself as evidence of the prior art product's features.  This Court answers in the affirmative.

For product-based anticipation such as that at issue here, secondary materials about a product may be relied upon as evidence of how the prior art product works for anticipation purposes.  *See RCA Corp. v. Data Gen. Corp.*, 887 F.2d 1056, 1060 (Fed. Cir. 1989) ("[T]hat the [allegedly anticipatory product anticipates] the claimed invention may be established by any

relevant evidence, such as memoranda, drawings, correspondence, and testimony of witness."); *Zenith Elecs. Corp. v. PDI Comm'ncs Sys., Inc.*, 522 F.3d 1348, 1358–59 (Fed. Cir. 2008) (holding that a combination of printed schematics and expert testimony on a product was permissible and indeed sufficient to prove anticipation); *IP Innovation L.L.C. v. Red Hat, Inc.*, No. 2:07-CV-447 RRR, 2010 WL 9501469, at *4 (E.D. Tex. Oct. 13, 2010) (holding that there is "no error in using multiple references to describe a single prior art system for the purpose of showing anticipation" where an expert relies on those references to understand how the prior art functions); 3 Annotated Patent Digest § 17:141.50 ("When anticipation is based on the public use of prior art device, i.e., the physical thing, a challenger may rely on multiple pieces of evidence, including multiple documents, to show that prior art device meets each claim limitation . . . [because] the multiple documents are being used to show that the single prior art device, when used publicly, contained all of the claim limitations.")

Moreover, even assuming that the secondary materials cannot be used in such a way, it is not clear that a product manual provided with the product itself and included in its installation package is even a *secondary* material. Instead, such documentation may be deemed a part of the product itself. *See Finjan*, 2013 WL 5302560 at *12 ("[T]he . . . software product upon which [the expert witness] relied included both the executable software and a copy of the user guide explaining how the product worked."). Other courts have likewise acknowledged the propriety of considering such evidence in conjunction with the product itself. *See, e.g., Zenith Elecs. Corp.*, 522 F.3d at 1358–59; *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1352–53 (Fed. Cir. 2004), *rev'd on other grounds*, 546 U.S. 394 (2006).

In addition, Defendant's expert properly relied on confidential source code as corroborating evidence of invalidity of the '076 Patent, contrary to the Special Master's findings.

(*See* R&R 12, 19.)  The relevant caselaw, which was not referenced by the Special Master, bears this out to be true.  *See, e.g., Koninklijke Phillips N.V. v. Zoll Med. Corp.*, 656 Fed. App'x 504, 528–29 (Fed. Cir. 2016) (noting that an expert may rely on otherwise confidential information as corroborating evidence for their opinion); *Uniloc 2017 LLC*, at *3 ("the . . . system is alleged to be a publicly-used system, and the non-public nature of the source code does not change that fact . . . .  The source code is merely being used to show how that system operates.  Confidential source code is frequently used as evidence for invalidity.").  Reliance on such confidential information is permissible because the question in such circumstances is merely whether the expert's testimony is sufficiently corroborated, not whether the underlying confidential information was publicly available.  *See Koninklijke Phillips N.V.*, 656 Fed. App'x at 528–29.  The same is true here— Defendant's expert only relied upon the confidential source code to corroborate and explain how the MicroStrategy 7.5 program worked, *not* as an independent prior art reference.

Plaintiff's arguments to the contrary are based primarily on a waiver theory.  *See* Pl.'s Resp. 4–5.  However, these arguments miss the mark.  Defendant did indeed previously suggest that the MicroStrategy 7.5 product should be considered in combination with the manuals and other related documentation for anticipation purposes.  *See, e.g.,* Def.'s Opp'n 17 ("Dr. Jones' Expert Invalidity Report shows that he demonstrates invalidity of both Asserted Patent through the public-facing operation of MicroStrategy [7.5], *and its associated public MicroStrategy Documentation*.") (emphasis added).  Moreover, to the extent Defendant makes a more *detailed* argument regarding this point in its Objection than elsewhere, such an argument was necessarily compelled both by Plaintiff's Reply and the R&R itself, both of which gave more thorough treatment to the issue than any of the initial briefings.  *Compare* Pl.'s Mem. Supp. 21–29 *with* Pl.'s Resp. 9–14 and R&R 20–21, 26.)

In short, the Special Master erred in concluding that the secondary materials and Defendant's expert testimony regarding the source code could not be considered in determining whether MicroStrategy 7.5 anticipates the '076 patent pursuant to either § 102(a) or § 102(g)(2). The Special Master's recommendation—that summary judgment be granted to Plaintiff as to this defense—was largely based upon this erroneous determination. *See* R&R 12, 19–21, 26. Therefore, the Court will not adopt the Special Master's recommendation as to this issue and will proceed to conduct the standard summary judgment inquiry.

Viewed in the light most favorable to the Defendant, the documentation, manuals, and expert testimony regarding the source code, in conjunction with the software itself, may provide clear and convincing evidence of features that constitute anticipating prior art. *See K-TEC, Inc.*, 696 F.3d at 1376 (requiring clear and convincing evidence to hold a claim invalid for anticipation). As outlined above, Defendant provides various pieces of factual evidence that a jury could rely upon to find that the MicroStrategy platform anticipates the '076 Patent. Specifically, Defendant provides expert testimony concerning what the MicroStrategy platform teaches, and how it allegedly meets certain claim limitations of the '076 Patent. *See, e.g.,* Opening Exp. Report of Dr. Jones ("Dr. Jones Rept.") at 33–36, ECF No. 113-2; Ex. 9 to Dr. Jones Rept. at 6–7, 9, 12–13, ECF No. 122-14 (Screens 4, 6, 8, 13–16)). Properly considered, this evidence raises a genuine issue of material fact as to whether MicroStrategy 7.5 anticipates the '076 Patent. As such, the Court will deny Plaintiff's Motion for Summary Judgment as to Defendant's § 102(a), § 102(g)(2), and documentation anticipation defenses regarding the '076 Patent.

2. Applicability of the Indefiniteness Defense Regarding the '076 Patent.

       *a. Special Master's Recommendation*

With regard to this defense, Defendant argues that the following "term" is indefinite: "assigning at least one set of role instances to at least one group and assigning the at least one group to the at least one super role." R&R 38. The Special Master dealt with this contention swiftly, finding that "Defendant waived its opportunity to request that the Court construe this term." R&R 39. As a result, the Special Master recommended that the Court grant Plaintiff's Motion for Summary Judgment as to Defendant's indefiniteness defense for the '076 Patent.

The Special Master gave four main reasons for his recommendation, all of which essentially boil down to the fact that Defendant's indefiniteness argument was not raised during claim construction. *See id.* at 39–41. First, the Special Master stated that "the proper time to propose terms for construction was during the claim construction process. Because Defendant failed to propose this term for construction at the appropriate time . . . Defendant waived its opportunity." *Id.* at 39–40. Second, the Special Master found that Defendant's failure to raise the issue earlier rendered its present request untimely. *Id.* at 40. Third, the Special Master stated that Defendant also waived further construction of the terms at issue by "selectively proposing [upon] which grounds . . . this term was indefinite." *Id.* Specifically, the Special Master noted that the Defendant had only proposed that the term was indefinite pursuant to § 112, ¶ 6, while Defendant now bases its indefiniteness defense on § 112, ¶ 2. Lastly, the Special Master claimed that Defendant's "failure to propose that this term is indefinite pursuant to § 112, ¶ 2 during claim construction indicates the term does not need to be construed, i.e., the term is not indefinite." *Id.* The Special Master's conclusion was based upon the fact that the clear and convincing evidence standard applies to this defense, and that if such evidence of indefiniteness existed, "Defendant

would have proposed that this term was indefinite pursuant to § 112, ¶ 2" during the original claim

construction process.  *Id.*  The Special Master claimed that the Defendant's failure to do so

indicated that Defendant did not believe there was clear and convincing evidence of the term's

indefiniteness.  *Id.* at 40–41.

### b.  Defendant's Objections

Defendant once again takes issue with the rationale underlying the Special Master's

recommendation.  *See* Def.'s Obj. 16–18.  Defendant first argues that its indefiniteness argument

"is in fact timely (and could not have been raised during claim construction) because it is based on

an ambiguity that became relevant based on the infringement theory in Plaintiff's exert report,

raised after claim construction and . . . fact discovery."  Def.'s Obj. 17.  Defendant further argues

that the Special Master's waiver finding is wholly unsupported by law, and contends instead that

"there is an abundance of law suggesting that this finding is improper."  Def.'s Obj. 17–18 (citing

*Apple, Inc. v. Samsung Elecs. Co.*, 932 F. Supp. 2d 1076, 1079 (N.D. Cal. 2013); *Indus. Tech.*

*Rsch. Inst. V. LG Elecs. Inc.,* 2014 WL 6907449, at *2 (S.D. Cal. Dec. 8, 2014).  Defendant also

notes that the Federal Circuit has "repeatedly held that claim construction is not restricted to a

single event."  Def.'s Obj. 18 (citing *Level Sleep LLC v. Sleep No. Corp.*, 2021 WL 2934816, at

*3 (Fed. Cir. July 13, 2021); *Conoco, Inc. v. Energy & Env't, Int'l, L.C.*, 460 F.3d 1349, 1359

(Fed. Cir. 2006).

### c.  Plaintiff's Response

Plaintiff reiterates its previous arguments, claiming that Defendant did not timely raise its

indefiniteness argument.  *See* Pl.'s Resp. 7–9.  Plaintiff cites to caselaw purporting to hold that

"claim construction issues must be timely raised . . . .  Failure to do so can result in waiver."  *Id.*

at 8 (citing *Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1369 (Fed. Cir. 2022) (internal citations

omitted); *Finalrod IP, LLC v. John Crane, Inc.*, No. 7:15-CV-00097-ADA, 2019 WL 4061703, at

*2 (W.D. Tex. May 30, 2019); *Not Dead Yet Mfg. Inc. v. Pride Solutions, LLC*, 265 F. Supp. 3d 811,

833 (N.D. Ill. 2017)).  Plaintiff also argues that Defendant *could* have raised its indefiniteness argument

earlier, contrary to Defendant's claim that the scope of its indefiniteness argument only became clear

based on alleged ambiguities in Plaintiff's infringement theory. *See id.* at 8–9.  Plaintiff continues that,

even if Defendant is earnest in claiming that its indefiniteness argument only became apparent more

recently, Defendant still had ample time prior to the Special Master's R&R to raise the issue. *See id.*

### d. The Court's Analysis

Reviewing the Special Master's recommendation *de novo*, the Court finds that the Special

Master's decision was unsupported by law, and therefore declines to adopt this portion of the

Special Master's recommendation.  Further, the Court will deny Plaintiff's Motion for Summary

Judgment as to Defendant's indefiniteness defense.

Pursuant to pre-AIA 35 U.S.C. § 112, ¶ 2, an applicant "must particularly point[] out and

distinctly claim[] the subject matter which the inventor . . . regards as the invention." 35 U.S.C. §

112, ¶ 2 (2011).  The Federal Circuit has held that "[t]he question of whether the claims meet the

statutory requirement of § 112, ¶ 2 is a matter of construction of the claim." *S3 Inc. v. NVIDIA

Corp.*, 259 F.3d 1364, 1367 (Fed. Cir. 2001).  In turn, the dispositive inquiry is whether "a patent's

claims, viewed in light of the specification and prosecution history, inform those skilled in the art

about the scope of the invention with reasonable certainty. . . .  [This standard] mandates clarity

while recognizing that absolute precision is unattainable." *Nautilus, Inc. v. Biosig Instrments, Inc.*,

572 U.S. 898, 910 (2014).  Indefiniteness can therefore be raised as a defense against patent

infringement:  if a claim (or portion thereof) is not sufficiently definite, the claim is invalid.  *See

Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1343 (Fed. Cir. 2016).  Indefiniteness

is a question of law that necessarily involves underlying factual determinations.  *Green Edge

*Enterprises, LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1298–99 (Fed. Cir. 2010). Summary judgment on this issue is thus only proper where there are no genuine factual disputes underlying the legal question. *Bombardier Recreational Prods. Inc. v. Arctic Cat Inc.*, 785 Fed. App'x, 858, 867 (Fed. Cir. 2019).

Plaintiff claims that it is entitled to summary judgment as to any indefiniteness defense. Pl.'s Mem. Supp. 30–31. Plaintiff's argument rests upon the contention that Defendant waived its potential indefiniteness defense by not raising it sooner—namely, at claim construction. *Id.*; *see* Pl.'s Resp. 7–9. Defendant argues that it has not waived this defense, insofar as it has raised concerns with the relevant claim phrase at various stages throughout the litigation. Def.'s Opp'n 30–31. Specifically, Defendant points to its interrogatory responses and expert reports as evidence that it has consistently maintained this indefiniteness challenge. *Id.* Defendant also notes that it could not have raised this argument any sooner because it is "based on an ambiguity that became relevant based on the infringement theory in Plaintiff's expert report, raised after claim construction and after fact discovery." Def.'s Obj. 17. Defendant then argues that, in any event, claim construction and indefiniteness challenges are not confined solely to the formal claim construction stage. *See id.* 17–18; Def.'s Opp'n 31–33.

Based on the above, there are two issues: (1) whether Defendant is foreclosed from raising an indefiniteness defense altogether due to waiver, and (2) if Defendant is not found to have waived this defense, whether the Plaintiff is entitled to summary judgment on the indefiniteness issue regardless.

### *i. Waiver*

The first issue here concerns when an indefiniteness defense may be raised. *See* R&R 38–41. While not directly on point, binding precedent appears to exist, inasmuch as various courts

facing this issue have found that "[n]othing in the law confines a party's indefiniteness argument to the claim construction stage of the litigation." *Versata Software, Inc. v. Zoho Corp.*, 213 F. Supp. 829, 834 (W.D. Tex. 2016) (citing *Conoco, Inc. v. Energy Env't, Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006); *Apple, Inc. v. Samsung Elecs. Co.*, 932 F. Supp. 2d 1076, 1079 (N.D. Cal. 2013); *Indus. Tech. Rsch. Inst. V. LG Elecs. Inc.*, 2014 WL 6907449, at *2 (S.D. Cal. Dec. 8, 2014)).   The Federal Circuit has also made clear that, while parties may not raise new claim construction arguments on appeal, *Conoco, Inc.*, 460 F.3d at 1358–59, no such restriction exists before a final lower court decision:   "district courts may engage in 'rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.'"  *Id.*

To the extent a party *can* be deemed to have waived indefiniteness or claim construction-related concerns, courts have discretion regarding whether to find a party waived their opportunity to raise such concerns.  *See, e.g., Cioffi v. Google, Inc.*, 2017 WL 275386, at *5 n.2 (E.D. Tex. Jan. 9, 2017) ("The court has ample grounds to find that Google waived its claim construction arguments . . . but the [c]ourt declines to find waiver at this stage.")  Indeed, "courts generally will not find a waiver of an indefiniteness challenge simply because an accused infringer did not raise the challenge as part of its claim construction arguments."  4 ANNOTATED PATENT DIGEST § 23:25.120 (collecting cases).

Plaintiff cites several cases ostensibly holding the contrary position.  Pl.'s Mem. Supp. 30–31; Reply 21–22; Pl.'s Resp. 7–8.)  One such case, *Central Admixture Pharmacy Services*, appears to support a finding of waiver under certain circumstances: "[Defendant] argues that the district court erred by failing to construe the term 'maintaining' in Claims 7–12.  The district court found that ACS waived any argument with respect to this term by failing to raise it during the claim

construction phase.  We agree." *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007).  And in fact, courts do occasionally find waiver when a party fails to timely and adequately challenge or assert particular claim constructions.  *See id.; Norix Group v. Corr. Techs., Inc.*, 2020 WL 6153266, at *2 (N.D. Ill. June 24, 2020); *Finalrod IP, LLC v. John Crane, Inc.*, 2019 WL 4061703, at *2 (W.D. Tex. May 30, 2019); *Gammino v. Sprint Comm'ncs Co., L.P.*, 2014 WL 3973503, at *8 (Fed. Cir. 2014); 1 Annotated Patent Digest § 3:9 (collecting cases).

However, a thorough review of Federal Circuit precedent indicates that waiver generally arises where (1) a party fails to object to jury instructions using a certain claim construction, (2) engages in clear conduct showing acquiescence to a particular claim construction (e.g., withdrawing prior objections before later attempting to re-assert them), or (3) fails to preserve the issue at the district court level altogether.  *See, e.g., Solvay S.A. v. Honeywell Int'l Inc.*, 742 F.3d 998, 1003–04 (Fed. Cir. 2014); *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1408 (Fed. Cir. 2004); *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1262 (Fed. Cir. 2013); *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1331 (Fed. Cir. 2009); *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 694 (Fed. Cir. 2008); 1 Ann. Pat. Dig. § 3:9 (collecting cases).

Piecing together the caselaw, there are several main takeaways.  First, claim construction continues until a final judgment is rendered.  *See Conoco, Inc.*, 460 F.3d at 1358–59 (allowing rolling claim construction but noting that a party may not introduce new claim construction arguments on appeal).  Similarly, a party need not raise a specific indefiniteness defense at the claim construction phase in order to be able to raise that defense later.  *See, e.g., Versata Software, Inc. v. Zoho Corp.*, 213 F. Supp. 829, 834 (W.D. Tex. 2016), *aff'd in part, vacated and remanded in part on other grounds*, 717 F.3d 1255, 1258, 1269 (Fed. Cir. 2013).  Additionally, courts are

26

permitted to find a party waived claim construction or indefiniteness challenges, but typically only do so under a narrow set circumstances. *See, e.g., id.*; *Solvay S.A. v. Honeywell Int'l Inc.*, 742 F.3d 998, 1003–04 (Fed. Cir. 2014); *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1408 (Fed. Cir. 2004). Finally, courts have discretion in deciding whether to find a party waived a particular claim construction or indefiniteness challenge. *See, e.g., Cioffi*, 2017 WL 275386 at * 6 n.2 (citing *Cent. Admixture Pharmacy Servs., Inc.*, 482 F.3d at 1356).

In turn, this Court finds that Defendant is not foreclosed from bringing this indefiniteness defense as the result of "waiver." The circumstances here do not map on to the standard waiver situations outlined above (e.g., clear conduct showing acquiescence to a particular claim construction). Instead, Defendant has largely maintained its position that the phrase in question is ambiguous. *See* Def.'s Opp'n 30–31; Def.'s Obj. 16–18. Moreover, as Defendant notes, its argument could not have been raised at any earlier stage regardless. Def.'s Obj. 17. Defendant's argument instead arises from an "ambiguity that became relevant based on the infringement theory in Plaintiff's expert report, raised after claim construction and fact discovery." *Id.* Finding waiver under such circumstances would essentially amount to punishing Defendant for circumstances outside of its control. Defendant should therefore be permitted to pursue the merits of its indefiniteness claim, contrary to the Special Master's recommendation.

*ii. Substantive Review*

Having decided that Defendant has not waived its indefiniteness defense, the issue becomes whether the evidence, viewed in the light most favorable to Defendant, raises a genuine issue of material fact as to indefiniteness. Importantly, "[b]ecause the claims of a patent are afforded a statutory presumption of validity, overcoming the presumption of validity requires that any facts supporting a holding of invalidity must be proved by clear and convincing evidence." *Budde v.*

27

*Harley-Davidson, Inc.*, 250 F.3d 1369, 1376–77 (Fed. Cir. 2001).   In conjunction with the summary judgment standard, this means that the evidence in the record must be capable of supporting a jury finding that the defense of indefiniteness has been shown by clear and convincing evidence.   *See Anderson*, 477 U.S. at 255–56; *id.*   The dispositive question concerning indefiniteness is whether "a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty. . . . [This standard] mandates clarity while recognizing that absolute precision is unattainable." *Nautilus, Inc.*, 572 U.S. at 910.

The claim phrase at issue is:  "assigning at least one set of role instances to at least one group and assigning the at least one group to the at least one super role."   R&R 38; Pl.'s Mem. Supp. 30; Def.'s Opp'n 30.   Plaintiff largely side-steps the question of whether the evidence could support a finding that this phrase is ambiguous.   Instead, Plaintiff primarily argues that the defense of indefiniteness has been waived.   *See* Pl.'s Mem. Supp. 30–31; Pl.'s Resp. 7–9.   Defendant, on the other hand, presents several pieces of evidence in its favor.

Defendant first emphasizes that it has repeatedly "contended that [the relevant] claim phrase may be indefinite under 35 U.S.C. § 112, ¶ 2 for failing to provide reasonable certainty about the scope of the claim."   Def.'s Opp'n 30.   Defendant did indeed make such contentions in its Supplemental Responses to Plaintiff's Interrogatories.   Def.'s Supp. Resp. Interrogs. 10, ECF No. 143-7.   There, Defendant argued that "group," "as used in claims 1, 6 and 12 of the '076 Patent is ambiguous, as it could refer to a group of permissions or a group of users."   Def.'s Opp'n 30.   Defendant also provides expert testimony from Dr. Jones to this effect, with Dr. Jones "opin[ing] that the 'plain meaning of "group" can encompass either a number of individuals (such as users) or objects (such as privileges).'"   *Id.* at 30–31; *see* Dr. Jones Rept. 97–101, ECF No. 113-2.

Additionally, "Dr. Jones further explained that, although the intrinsic evidence points to the latter (a group of privileges/role instances), Daedalus' expert, Dr. Malek[,] expressed opinions using the former, thereby highlighting the ambiguity in the claim."  Def.'s Opp'n 30–31; *see* Dr. Jones Rept. 97–101.  A comparison of the expert reports reveals this disagreement between the experts.  *See, e.g.,* Dr. Jones Rept. 97–101; Opening Expert Report of Dr. Malek 5, ECF No. 143-8.

Because the parties' experts highlight different meanings of this term within the relevant claim, a colorable indefiniteness defense remains for the jury to resolve.  *See, e.g., Cioffi*, 2017 WL 275386 at * 6 (holding that summary judgment is improper in the patent infringement context where a factual dispute exists between experts).  Summary judgment on the issue of indefiniteness is therefore improper and will not be granted.

## IV. CONCLUSION

For the foregoing reasons, the Court will adopt the uncontested portions of the R&R, sustain Defendant's objections, and grant-in-part and deny-in-part Plaintiff's Motion for Summary Judgment, as outlined herein.

An appropriate Order will accompany this Memorandum Opinion.

_____
/s/
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: September 12, 2023

29